**UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MISSOURI EASTERN DIVISION**

| | | |
|---|---|---|
| **MORGAN A. KATELIN PEARSON, and** | ) | |
| **KIRSTEN ELIZABETH KIRKPATRICK,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 4:16-CV-1450** |
| **v.** | ) | |
| | ) | |
| **LOGAN UNIVERSITY d/b/a LOGAN** | ) | |
| **COLLEGE OF CHIROPRACTIC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT LOGAN UNIVERSITY'S RESPONSES TO
PLAINTIFFS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

Defendant Logan University d/b/a Logan College of Chiropractic ("Logan"), by and through its undersigned counsel, submits the following Responses to Plaintiffs' Statement of Uncontroverted Material Facts.

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1.      Plaintiff Pearson applied to Logan University's undergraduate program during her senior year of high school. Ex. A., Pearson Dep. 20:15-19.

**RESPONSE:  Admitted.**

2.      Plaintiff Pearson began attending Logan University in September of 2015. Ex. A., Pearson Dep. 20:20-24.

**RESPONSE:  Admitted.**

3.      Plaintiff Pearson attended Logan University's orientation program, which hosted approximately 140 new students.  Ex. A., Pearson Dep. 22:19 - 23:21.

**RESPONSE: Admitted. See Logan's Statement of Uncontroverted Material Facts No. 2.**

4.      Plaintiff Pearson and Shelley Sawalich first met on December 9, 2015. Ex. A., Pearson Dep. 24:19-23.  Ex. AA, LOGAN - 000009.

**RESPONSE:  Admitted.**

5.      Plaintiff Pearson first met Male Suspect in September 2015 at Logan University. Ex. A., Pearson Dep. 33:23-24.

**RESPONSE:  Admitted.**

6.      Daniel Trout, a student and library employee at Logan University, had a conversation with Plaintiff Pearson around December 2015 about Male Suspect's abnormal behaviors and inappropriate use of the library. Ex. A., Pearson Dep. 38:10-39:7.

**RESPONSE: Objection**. **This alleged fact is based on inadmissible hearsay.**

7.      Plaintiff Pearson met with Sandra Perriello on December 8, 2015 to complain about Male Student's behavior. Ex. A., Pearson Dep. 39:18-25. Ex. BB, LOGAN - 000004.

**RESPONSE: Denied that the cited evidence supports the purported statement of fact as it is phrased, admit that Pearson testified that she "approached" and "spoke to" Ms. Perriello on that date.**

8.      On December 9, 2015, Sandy Perriello wrote to to [sic] Morgan Pearson: "I wanted to remind you that I need a statement from you about your issue with the other student. Please provide the information we discussed as soon as possible. Thank you." Ex. BB, LOGAN - 000004.

**RESPONSE:  Admitted.**

9.     In responding to Periello's request that Sawalich meet with Plaintiff Pearson, Sawalich asked, "Did she send you [Periello] a written statement for me to review?" Ex. CC, LOGAN - 000005.

**RESPONSE:  Admitted.**

10.     On December 8, 2015 Don Davis, a student at Logan University, informed Plaintiff Pearson that the Male Suspect was attempting to change his schedule to match hers. Ex. A., Pearson Dep. 40:20-41:6. Exhibit DD, LOGAN - 000369 ("he is trying to make sure he is in the same tri as she is").

**RESPONSE:  Objection**. **This alleged fact is based on inadmissible hearsay.**

11.     On December 8, 2015 Plaintiff Pearson informed Sandra Perriello she had been sexually assaulted in Logan University cadaver lab on November 12, 2015. Ex. A., Pearson Dep. 45:13-46:18.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as there is no mention of or reference to a "sexual assault."**

12.     Plaintiff Pearson expressed she was "terrified of retaliation." Ex. A., Pearson Dep. 48:20. Exhibit DD, LOGAN - 000369 ("is afraid of retaliation").

**RESPONSE:  Admitted.**

13.     Plaintiff Pearson never received copies of Sandra Perriello's notes taken during the December 8, 2015 meeting, though Perriello's notes were provided in discovery of this lawsuit. Ex. A., Pearson Dep. 49:7-9.  Ex. V., Sawalich Dep. 101:8-9. LOGAN - 000369.

**RESPONSE: Admitted.**

14.     Sandra Perriello asked Plaintiff Pearson "to write down what had happened [between her and Male Suspect]." Ex. A., Pearson Dep. 49:19-20.  Ex. BB, LOGAN - 000004.

**RESPONSE: Admitted.**

15.     Plaintiff Pearson was unfamiliar with Title IX mandates on December 9, 2015. Ex. A., Pearson Dep. 57:13-19.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*"). Subject to this objection, admitted.**

16.     Shelley Sawalich did not believe Plaintiff Pearson was being "sexually harassed." Ex. A., Pearson Dep. 58:20-59:2. Ex. EE, LOGAN - 000230 "Allegations were in relation to harassment and stalking."

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as the cited testimony makes no reference to Sawalich's beliefs.**

17.     Shelley Sawalich labeled Plaintiff Pearson's allegations as harassment and stalking. Ex. A., Pearson Dep. 59:4

**RESPONSE:  Admitted.**

18.     Plaintiff Pearson told Shelley Sawalich she was unsure if she wished to report the issue. Ex. A., Pearson Dep. 59:15-17.

**RESPONSE:  Admitted.**

19.     Shelley Sawalich responded to the above by saying she had to investigate and stating "If you [Pearson] wanted someone to talk to, you should have gone to see a counselor. I am not a counselor." Ex. A., Pearson Dep. 59:15-20.

**RESPONSE:   Admitted that the quote in this statement is a paraphrasing of Plaintiff Pearson's cited deposition testimony, omitting the first word – "Like," – of the second sentence quoted.**

20.     Plaintiff Pearson told Shelley Sawalich she was "terrified of being raped." Ex. A., Pearson Dep. 60:3-4

**RESPONSE:  Admitted.**

21.     Shelley Sawalich had the understanding that Plaintiff Pearson was worried about being raped. Ex. FF, LOGAN - 000244 ("Morgan said, 'something needs to be done quickly before someone gets thrown in the trunk and raped'"), LOGAN - 000251 ("Morgan had implied [...] he was the kind of guy that would abduct you, take you to the woods, and rape you"), LOGAN - 000281 ("When Dean Sawlich [sic] asked me what I was most scared of the day I walked into her office I said I was scared of being raped").

**RESPONSE: Defendant objects to this purported statement of fact as it is purportedly based upon LOGAN – 000244, LOGAN – 000251 and LOGAN – 000281 all of which are not a part of the cited Ex. F and, therefore, are not properly before the Court for consideration per the requirements of the applicable Federal and Local Rules.**

22.     Plaintiff Pearson told Shelley Sawalich she was assaulted by Male Suspect. Ex. A., Pearson Dep. 61:12-13.

**RESPONSE:  Denied. Plaintiff Pearson testified that she believed the incident was an accident. See Ex. A., Pearson Dep. 61:14-62:2 and 75:22-76:5.**

23.     Shelley Sawalich deemed the sexual assault by Male Suspect an accident. Ex. A., Pearson Dep. 61:17-18, and 62:10-13.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as the cited testimony does not establish that Sawalich "deemed" the assault an accident. Rather, the testimony is that Sawalich suggested to Plaintiff Pearson that "it might have been an accident." Further, Plaintiff Pearson also testified i) that she told Sawalich that she agreed that the "assault" could have been an accident, and ii) that in her (Pearson's) mind "it's still an accident." Ex. A., Pearson Dep. 61:14 – 62:1.**

24.     Plaintiff Pearson provided Shelley Sawalich with four witnesses on December 9, 2015: Daniel Trout, Chrissy Reed, Lucas Van Pelt, and Library Staff (including Ellen Dickman). Ex. A., Pearson Dep. 62:1-2.  Ex. GG, LOGAN - 000371.

**RESPONSE:  Admitted.**

25.     Shelley Sawalich did not interview three of Plaintiff Pearson's witnesses, Trout, Van Pelt, and Ellen Dickman, until February 3, March 7, and February 4, respectively. Ex. HH, LOGAN - 000241, 000316, and 000246.

**RESPONSE:  Admitted that the interviews of Trout, Van Pelt and Dickman took place on the indicated dates.**

26.     Chrissy Reed's interview, to the extent that she was interviewed at all, was

not given to the Student Honor Council. Ex II, LOGAN - 000204, an e-mail given to the Student Honor Council with the full set of attachments for review.

**RESPONSE:  Denied. The cited evidence does not support the purported statement of fact as it is phrased, as Ex. II: i) does not purport to be a complete listing of the materials provided to the Honor Council to review (see Ex. II, "Attached is the report … as well as some of the interview write ups. I'll send the rest in another email because of size.").**

27.     Shelley Sawalich asked Plaintiff Pearson to provide a written statement. Ex. A., Pearson Dep. 66:9-12. Ex. JJ, LOGAN - 000015.

**RESPONSE:  Admitted.**

28.     In Plaintiff Pearson stating that she wished to complete her statement by the following week because she was "pinched for time" that weekend, Sawalich replies with the following: "Thanks for your e-mail.  You are welcome to get me the information next week [...] What this means, though, is that I won't really be able to move forward until next trimester with the investigation.  Is that okay with you?". Ex. JJ, LOGAN - 000015.

**RESPONSE:  Admitted.**

29.     Shelley Sawalich agreed to interview Plaintiff Pearson's witness even when Pearson wanted to remain anonymous. Ex. A., Pearson Dep. 68:9-69:13.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as the cited testimony does not establish that Sawalich "agreed to interview" the witnesses with Pearson remaining anonymous. Rather, the testimony reflects that Sawalich indicated it was possible and provided an example of how a question would be formed if Pearson remained anonymous.**

30.     Shelley Sawalich did not move forward with Plaintiff Pearson's Title 9 complaint in December of 2015 because she had another Title 9 complaint to "take care of." Ex. A., Pearson Dep. 72:15-21.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact. Any delay in the investigation moving forward was occasioned by delays of Plaintiff getting her statement submitted and the unavailability of witnesses for interviews between school sessions. Ex. V, Sawalich Dep. 32:9 – 34:1, 36:11 – 37:22, 66:12 – 19.**

31.     Plaintiff Pearson emailed Shelley Sawalich for an update on January 16, 2016, stating that "He [Male Student] continues to show up and make me uncomfortable, and I continue to feel unsafe at Logan.". Ex A., Pearson Dep. 82:1-14. Ex. KK, LOGAN - 000052.

**RESPONSE:  Admitted.**

32.     Shelley Sawalich met with Male Suspect twice in January of 2016. Ex. A., Pearson Dep. 83:16-17. Ex. LL, LOGAN - 000053.

**RESPONSE:  Admitted.**

33.     Shelley Sawalich expressed to Plaintiff Pearson that she had a second meeting with Male Suspect because he was "really angry at the first one [meeting]." Ex. A., Pearson Dep. 88:16-21. Ex. MM, LOGAN - 000238, ("When Kevin came back in, he stated that he had been angry about the accusations and was really looking for more information").

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as nothing in the cited testimony establishes Sawalich met with the Male Student a second time "because" he had been angry at the first meeting. Admitted**

that the cited testimony establishes that Sawalich had two meetings with the Male Student and that the Male Student expressed to Sawalich that he had been angry at the first meeting.

34.     Shelley Sawalich told Plaintiff Pearson she informed Male Suspect that any retaliation would be "frowned upon." Ex. A., Pearson Dep. 89:12-16.

**RESPONSE:   Admitted that that is how Plaintiff Pearson characterized a conversation that she had with Sawalich about her interaction with the Male Student.**

35.     Shelley Sawalich refused to interview Plaintiff Pearson's four witnesses between December 2015 and January 2016 because it would be difficult to maintain confidentiality and be unfair to Male Suspect. Ex. A., Pearson Dep. 90:18-91:25.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact. Any delay in the investigation moving forward was occasioned by delays of Plaintiff getting her statement submitted, the unavailability of witnesses for interviews between school sessions, and Plaintiff's request to remain anonymous. Ex. V, Sawalich Dep. 32:9 – 34:1, 36:11 – 37:22, 66:12 – 19.**

36.     Shelley Sawalich told Plaintiff Pearson "I hope I don't see you again" as Pearson was leaving her office on January 19, 2016. Ex. A., Pearson Dep. 91:23-24. Ex. R., Pearson Dep. 16:2-6.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d**

1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

Subject to this objection, admitted that Plaintiff so testified in her deposition at p. 91. Denied that the p. 16 citation supports this statement in any manner.

37.     Plaintiff Pearson expressed to Ellen Dickman and Stacey Till she wished to leave Logan University for another school. Ex. NN, LOGAN - 000347 ("Morgan is strongly considering attending Palmer West instead of Logan [...] After discussion, it became clear that Morgan is not really wanting to attend another chiropractic college; she hasn't even visited any other schools").

RESPONSE:  Admitted.

38.     Plaintiff Pearson said "safety" is what she finds most important in a school. Ex. A., Pearson Dep. 103:6-13.

RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

**Subject to this objection, admitted that Plaintiff Pearson testified that she expressed that feeling in a meeting with Stacey Till, Logan's Vice President of Admissions, a person who had no role in the Title IX investigation and about whom Plaintiff Pearson has no complaint. Ex. A., Pearson Dep. 101: 7 – 23, 102:3 – 104:7, 104: 15 - 20.**

39.     Plaintiff Pearson attendetd (sic) a meeting with Boyd Bradshaw and Shelley Sawalich in February 3, 2016. Ex. A., Pearson Dep. 104:21-24.

**RESPONSE:  Admitted.**

40.     Plaintiff Pearson had previously met with Boyd Bradshaw on February 1, 2016. Ex. A., Pearson Dep. 104:25-105:2.

**RESPONSE:  Admitted.**

41.     Plaintiff Pearson complained to Boyd Bradshaw on February 1, 2016 about how Shelley Sawalich handled the Title 9 investigation. Ex. A., Pearson Dep. 105:25-106:19.

**RESPONSE:  Admitted.**

42.     Stacey Till was critical of Shelley Sawalich and suggested Plaintiff Pearson meet with Boyd Bradshaw. Ex. A., Pearson Dep. 108:1-6

**RESPONSE:  Objection**. **This alleged fact is based on inadmissible hearsay.**

43.     Boyd Bradshaw informed Plaintiff Pearson on February 1, 2016 that the Title IX investigation would be reopened. Ex. A., Pearson Dep. 109:21-24.

**RESPONSE: Denied. The cited testimony of Plaintiff is a non-responsive and self-serving statement that mischaracterizes the status of the investigation. The investigation continued when Plaintiff Pearson agreed that her anonymity was removed, which changed what the investigator could do with respect to the investigation. Ex. V, Sawalich**

**Dep. 66:10 – 21, 95:4 – 96:2.**

44.     Shelley Sawalich considered the investigation "complete" on January 19, 2016 "Because of her [Plaintiff Pearson's] wishes to remain anonymous" at that time.  Ex. X, LOGAN- 000231. Ex. V., Sawalich Dep. 67:14-21.

**RESPONSE:  Admitted.**

45.     Shelley Sawalich did not explain the limitations of being anonymous on December 9, 2015. Ex.A., Pearson Dep. 113:11-20.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact. Ex.A., Pearson Dep. 67:20 – 69:22.**

46.     On February 3, 2016 Shelley Sawalich, Boyd Bradshaw, and Plaintiff Pearson met in Boyd Bradshaw's office to discuss reopening the Title 9 investigation. Ex. A., Pearson Dep. 116:20-117:9.

**RESPONSE:   Admitted that the three met on February 3, denied that the discussion related to a "reopening" of the investigation. The investigation continued when Plaintiff Pearson agreed that her anonymity was removed, which changed what the investigator could do with respect to the investigation. Ex. V, Sawalich Dep. 66:10 – 21, 95:4 – 96:2.**

47.     Boyd Bradshaw informed Plaintiff Pearson he would "watch over" Shelley Sawalich as she investigated the Title 9 complaint. Ex. A., Pearson Dep., 119:10-15.

**RESPONSE:   Admitted. As Sawalich's supervisor Dr. Bradhaw "watched over" her job performance. Ex. V, Sawalich Dep. 64:15 – 25.**

48.     Plaintiff Pearson would have rather not have been contacted by any

administrators and had the Title IX investigation reopened and instead left the school. Ex. A., Pearson Dep., 121:20-23.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact. Ex. A., Pearson Dep., 117:25 – 121:19.**

49.     Plaintiff Pearson let her issues with Shelley Sawalich be know (sic) to at least two Logan administrators from December 8, 2015 to February 3, 2016. Ex. A., Pearson Dep. 124: 8-25. Ex. OO, LOGAN - 000285 ("Laurie [Hart] also e-mailed Dean Cole when she [Plaintiff Pearson] felt that the harassment case wasn't being handled properly").

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as the cited testimony makes no reference to Plaintiff Pearson expressing complaints or issues with Shelley Sawalich.**

50.     Plaintiff Kirkpatrick complained to Shelley Sawalich about Male Student on February 4, 2016. Ex. A., Pearson Dep. 128:1-11. Ex. C., Kirkpatrick Dep. 43:13-16.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased. Plaintiff Kirkpatrick did not make a complaint.**

51.     The decision of the Title IX Investigation would decide if Plaintiff Pearson stayed at Logan University of (sic) left the campus. Ex. A., Pearson Dep. 139: 7-25.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as the cited testimony appears to more accurately indicate that Plaintiff Pearson had decided to leave Logan if she did not receive a favorable determination from the Title IX investigation of her complaint.**

52.     Plaintiff Pearson, many times, asked Male Student to leave her alone. Ex. A., Pearson Dep. 141:1-5. Ex. PP, LOGAN - 000163 ("When in the library he talked to you, you told him that he should leave you alone").

**RESPONSE:  Admitted in part. The evidence cited shows that Plaintiff Pearson asked the Male Student to leave her alone in the library when she was working. Ex. PP.**

53.     Plaintiff Pearson informed Shelley Sawalich she did not have the text messages exchanged between herself and Male Student and asked to "move forward without the text messages". Ex. A., Pearson Dep. 151: 6-10. Ex. QQ, LOGAN - 000202.

**RESPONSE:  Admitted that Pearson did not have the text message, so informed Sawalich and requested that the investigation continue without them. Denied that the text messages were unavailable. Ex. QQ ("Unfortunately I wasn't able to retrieve any of the text message. My service provider said they could get the text messages back to me but it would most likely take up to six weeks for that to happen. So please move forward without the text messages.")**

54.     Shelley Sawalich and Plaintiff Pearson had a meeting on February 26, 2016, which was recorded by Shelley Sawalich. Ex. A., Pearson Dep. 153:6-18.

**RESPONSE:  Admitted.**

55.     Shelley Sawalich and Boyd Bradshaw told Plaintiff Pearson that Male Student would be asked to stay off campus besides attending his classes. Ex. A., Pearson Dep. 161:25-162:14.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact. Sawalich's recollection is that the Male Student was not allowed in the library until the investigation was completed. Ex. V, Sawalich Dep. 69:1 – 19, 86:1 – 13.**

56.     On February 29, 2016, Plaintiff Pearson had to email Shelley Sawalich about Logan University's Easter celebration and whether or not she could volunteer at a school event because she was afraid Male Suspect would be present. Ex. A., Pearson Dep. 172:6-14. Ex. RR, LOGAN - 000203.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased. The cited "testimony" consists merely of a question posed in Pearson's deposition, is inadmissible, and does not establish the purported fact stated. Further, Ex. RR does not support a conclusion that Pearson was in any way compelled ("had to") email Sawalich, or that, in doing so, Pearson was motivated by fear. The relevant portion of Ex. RR states, "Also, I really want to volunteer for the Easter celebration this week. Can you please let me know if [Male Student] has already volunteered or does volunteer because if he he (sic) is there I do not want to be."**

57.     Mei Ling Robin warned Plaintiff Pearson that Shelley Sawalich was attempting to "flip" her testimony. Ex A. Pearson Dep. 182: 2-18.

**RESPONSE: Objection**. **This alleged fact is based on inadmissible hearsay.**

58.     Plaintiff Kirkpatrick informed Plaintiff Pearson that Shelley Sawalich was not taking the Title IX Investigation seriously and they (sic) Plaintiff Pearson was "screwed." Ex. A., Pearson Dep. 190:10-16.  Ex. G, Kirkpatrick Dep. 76:19-25.

**RESPONSE:  Objection**. **This alleged fact is based on inadmissible hearsay and lacks foundation to establish personal knowledge.**

59.     Plaintiff Kirkpatrick insisted that Sawalich "made it seem like [Male Student] was innocent [...] She was trying to flip it as if Morgan was making a bigger deal out of the

situation than it was." Ex. G, Kirkpatrick Dep. 76:19-77:10.

**RESPONSE: Objection**. **This alleged fact is lacks foundation to establish personal knowledge as to what Sawalich was thinking.**

60.     After Plaintiff Pearson received Shelley Sawalich "Official Report" she had to be comforted by Pam Waske in class as she cried. Ex. A., Pearson Dep. 191:5-14.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . ."*).**

61.     Plaintiff Pearson had a limited amount of time to prepare her response to the Student Honor Council and wished she could have had more to prepare her response for the Student Honor Council. Ex. A Pearson Dep. 193:24-194:4.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as Plaintiff Pearson made no mention of a limited amount of time, testified that she felt like she had an adequate opportunity to respond, and she did not ask for more time to prepare her response. Ex. A Pearson Dep. 193:24-194:6.**

62.     Boyd Bradshaw and Plaintiff Pearson had a meeting in Bradshaws office on March 7, 2016. Ex. A., Pearson Dep. 194:21-24.

**RESPONSE:  Admitted.**

63.    Shelley Sawalich Official Report made Plaintiff Pearson more fearful of Male Student. Ex. A., 196:2-13.

**RESPONSE:   Admit that Plaintiff Pearson testified that the report made her "upset and like terrified," and "really angry." Ex. A., 196:2-13, 196:23-23.**

64.    Plaintiff Pearson and her mother met with the Student Honor Council on March 8, 2016. Ex. A., Pearson Dep. 3-7.

**RESPONSE:  Admitted.**

65.    The Student Honor Council decided to meet with Plaintiff Pearson first because "it all started with [Pearson]." Ex. A., Pearson Dep. 212:1-3.

**RESPONSE**:  **Admitted.**

66.    Lori Fulford, a member of the Student Honor Council, promised to keep Male Student away from Plaintiff Pearson. Ex. A., Pearson Dep. 212:12-17.


**RESPONSE:   Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

67.    Plaintiff Pearson never received the entire Student Honor Council decision. Ex. A., Pearson Dep. 216:20-217:5. Ex. SS, LOGAN - 000344, the Student Honor Council decision.

**RESPONSE:   Denied. Ex. SS cited is irrelevant and does nothing to prove the purported fact stated. The document referenced in the cited deposition testimony (Pearson Dep. Ex. 37) is not the Honor Council Decision and Plaintiff cites no admissible**

evidence to establish that it is. **The Honor Council Decision has been submitted as Ex. EEE to Logan's Motion for Summary Judgment [Doc. 58]. On March 11, 2016, Sawalich separately emailed Pearson and the Male Student the Honor Council's decision.**

68.   Plaintiff Pearson and her mother met with Boyd Bradshaw and Kimberly O'Reilly in O'Reilly's office on March 14, 2016. Ex A., Pearson Dep. 226:25-227:5.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as it only establishes that Plaintiff Pearson met with Dr. O'Reilly on March 14, 2016.**

69.   Before the meeting above, Plaintiff Pearson and her mother met with Boyd Bradshaw in his office, where Plaintiff Pearson once again made her displeasure with Logan known. Ex. A., Pearson Dep. 227:6-23.

**RESPONSE:  Admitted.**

70.   Plaintiff Pearson was unsure if she wanted to pursue an appeal and thought about the possibility of a restraining order against Male Student. Ex. A., Pearson Dep. 229:2-12.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary**

judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

71.     Kimberly O'Reilly offered to pay for Plaintiff Pearson's transcripts to transfer out of Logan University. Ex. A., Pearson Dep. 232:2-17.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

72.     Plaintiff Pearson left supporting documentation for an appeal with Dean Cole on March 15, 2016. Ex. A., Pearson Dep. 233:7-22.

**RESPONSE:  Admitted.**

73.     Kimberly O'Reilly informed Plaintiff Pearson that she would contact witnesses if necessary. Ex. A., Pearson Dep. 240:5-8.

**RESPONSE:  Admitted.**

74.     Kimberly O'Reilly informed Plaintiff Pearson that Male Student would not be made aware of the appeal. Ex. A. Pearson Dep. 240:18-19.

**RESPONSE:  Admitted.**

75.     Ellen Dickman informed Plaintiff Pearson that during her interview with Shelley Sawalich, Sawalich told her "all Shelley cared about was suspect maintain library access." Ex. A., Pearson Dep. 244:4-11.

**RESPONSE:   Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

76.     Ellen Dickman attempted to contact Kimberly O'Reilly about the comments made by Shelley Sawalich but O'Reilly never responded to Dickman phone messages. Ex. A., Pearson Dep. 245:10-21.

**RESPONSE:   Denied that the cited evidence supports the purported statement of fact as it is phrased, as there is no reference to a phone message or a failure to respond thereto. Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

77.     Kimberly O'Reilly wanted six more weeks to review and make a decision regarding Plaintiff Pearson appeal. Ex. A., Pearson Dep. 254:5-6. Ex. TT, LOGAN - 000352.

**RESPONSE:   Denied that the cited evidence supports the purported statement of fact.**

78.     Plaintiff Pearson retrieved supporting documents from Kimberly O'Reilly on April 4. 2016. Ex. A., Pearson Depo. 261: 7-9.

**RESPONSE: Admitted.**

79.     Plaintiff Pearson never deemed the text message sent by suspect to be "critical" in the Title IX Investigation. Ex. A., Pearson Dep. 265:4-16.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus,**

is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

80.    Bradshaw did not know who the Council members for her investigation were. Ex. A., Pearson Dep. 267:19-268:5.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

81.    Despite this, Boyd Bradshaw had previously promised Plaintiff Pearson he would talk to the Student Honor Council members. Ex. A., Pearson Dep. 268:6-10.

**RESPONSE:  Denied that the cited evidence supports the purported statement of fact as it is phrased, as there is no foundation for the date(s) or circumstances of the purported promise.**

82.     The Student Honor Council Members did not identify themselves to Plaintiff Pearson at the meeting. Ex. A., Pearson Dep. 268:16-21.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact*. . . .").**

83.     Shelley Sawalich began her employment with Logan University in 2015. Ex. C., Bradshaw Dep. 9:16 - 19.

**RESPONSE:  Admitted.**

84.     Body (sic) Bradshaw was Vice President for Enrollment Management at Logan University. Ex. C., Bradshaw Dep. 8:22 - 23.

**RESPONSE:  Admitted.**

85.     Boyd Bradshaw supervised James Paine. Ex. C., Bradshaw Dep. 13:18-20.

**RESPONSE: Admitted.**

86.     Body (sic) Bradshaw supervised Shelley Sawalich. Ex. C., Bradshaw Dep. 13:21-24.

**RESPONSE: Admitted.**

87.     Boyd Bradshaw had frequent one-on-one meetings with Shelley Sawalich. Ex. C., Bradshaw Dep. 14:2-11.

**RESPONSE: Admitted that Boyd Bradshaw met with Sawalich one-on-one either weekly or every other week.**

88.     Boyd Bradshaw first came into contact with Plaintiff Pearson upon a referral from Stacey Till in which Till sent Plaintiff Pearson an e-mail and copied Bradshaw on it. Ex. C., Bradshaw Dep. 47:10-17.

**RESPONSE: Admitted.**

89.     Male Student sent Plaintiff Kirkpatrick many texts that were "very forward," failing to "take hints that [Kirsten Kirkpatrick] wanted nothing to do with him whatsoever." Ex. D., Byrne Dep. 8:12 - 10:22.

**RESPONSE: Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

90.     Plaintiff Kirkpatrick was threatened by Male Student's text messages. Ex. D., Byrne Dep. 8:12 - 10:22.

**RESPONSE: Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge. The purported evidence is deposition testimony from Kirkpatrick's boyfriend, Mr. Byrne, regarded what Kirkpatrick said or felt.**

91.     Plaintiff Kirkpatrick reported to, at least, her boyfriend, Matthew Byrne, that she was distraught about Male Student's constant communications. Ex. D., Byrne Dep. 11:18 - 12:1.

**RESPONSE:   Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge. The purported evidence is deposition testimony from Kirkpatrick's boyfriend, Mr. Byrne, regarding what Kirkpatrick said or felt.**

92.     Plaintiff Kirkpatrick additionally reported that "she saw him [Male Student] following her once out to her car [...] one time she woke [Byrne] up out of bed because she thought shaw him [Male Student] out the window [...] she was definitely disturbed by [the situation]." Ex. D., Byrne Dep. 11:18 - 12:1.

**RESPONSE:   Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge. The purported evidence is deposition testimony from Kirkpatrick's boyfriend, Mr. Byrne, regarding what Kirkpatrick said or felt.**

93.     Plaintiff Kirkpatrick reported to, at least, Matthew Byrne that "she didn't feel safe [at Logan University]." Ex. D., Byrne Dep. 12:22-23.

**RESPONSE:   Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge. The purported evidence is deposition testimony from Kirkpatrick's boyfriend, Mr. Byrne, regarding what Kirkpatrick said or felt.**

94.     Plaintiff Kirkpatrick reported to, at least, Matthew Byrne that Logan University treated the situation with Male Student by "act[ing] like [the situation] was no big

deal." Ex. D., Byrne Dep. 13:6-9.

**RESPONSE:   Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge. The purported evidence is deposition testimony from Kirkpatrick's boyfriend, Mr. Byrne, regarding what Kirkpatrick said or felt.**

95.    Plaintiff Kirkpatrick initiated a complaint to Logan about Male Student on February 4th, 2016.  Ex. G., Kirkpatrick Dep. 43:13-16.  Ex. G., Kirkpatrick Dep. 33:6-13.

**RESPONSE:   Denied that the cited evidence supports the purported statement of fact as it is phrased. Plaintiff Kirkpatrick did not make a complaint.**

96.    According to Theresa Zemcuznikov Corbett, a student at Logan University, there was "something wrong" with Plaintiff Pearson's body language when Male Student was in the same space as Plaintiff Pearson.  Ex. F., Zemcuznikov Corbett Dep. 14:13 - 19.

**RESPONSE:   Admitted that the witness testified to believing that she observed "something wrong" with Pearson's body language on one specific case when the Male Student was in the presence of her and Pearson in the library, though he said or did nothing inappropriate.**

97.    Plaintiff Pearson reported that she must do something about the situation with Male Student, "before he [Male Student] rapes [her] and throws [her] in his trunk." Ex. F., Zemcuznikov Corbett Dep. 52:21-25. Ex. FF, LOGAN - 000244 ("Morgan said, 'something needs to be done quickly before someone gets thrown in the trunk and raped'").

**RESPONSE:   Admitted that the quoted material cited is accurately cited, but it is taken out of context. Ms. Zemcuznikov testified that she was alarmed and concerned about Plaintiff Pearson's comments mentioning the word "rape" because she feared that**

the Male Student's character was being impugned to an extent that was not warranted. **Ex. F., Zemcuznikov Corbett Dep. 52:7 – 57:16.**

98.     Kimberly Hartmann began her employment as the alumni director of Logan University in July 2011. Ex. N., Hartmann Dep. 9:2-4.

**RESPONSE:  Admitted, based upon Ex. N., Hartmann Dep. 8:2-4. Denied that the cited evidence supports the purported statement of fact.**

99.     Kimberly Hartmann's employment as the alumni director of Logan University lasted until 2015. Ex. N., Hartmann Dep. 9:18-22.

**RESPONSE:  Admitted, based upon Ex. N., Hartmann Dep. 8:18-22. Denied that the cited evidence supports the purported statement of fact.**

100.    Pam Waske contended that Plaintiff Pearson was "someone who was distressed; who had a hard time being able to come to class and stay focused; who was often distracted by what was going on outside of class and it was affecting her studies and what kind of student she was." Ex. Q., Waske Dep. 10:2-16.

**RESPONSE:  Denied that Pam Waske "contended" as stated. Admitted that she testified to the quoted language in describing Plaintiff Pearson during the time Waske interacted with her at Logan.**

101.    Pam Waske contended there "were several times" when Plaintiff Pearson "arrived to class visibly upset [...] based on a conversation she had with administration." Ex. Q., Waske Dep. 11:10-19.

**RESPONSE:   Denied that Pam Waske "contended" as stated. Admitted that Waske testified that she observed Pearson arrive to class visibly upset. Defendant objects to the testimony relating to the cause of Pearson's emotional state as lacking a proper**

foundation and inadmissible.

102.    Pam Waske testified that Male Student was "making her [Plaintiff Pearson] feel uncomfortable and [...] they [Logan Administration] didn't really do anything about it." Ex. Q., Waske Dep. 11:23-12:3.

**RESPONSE: Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

103.    Pam Waske testified that "conversations with Shelley [Sawalich] [...] really upset her [Pearson]." Ex. Q., Waske Dep. 12:18-24

**RESPONSE:  Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

104.    Plaintiff Pearson was given a "boys will be boys" contention from Shelley Sawalich. Ex. Q., Waske Dep. 12:25-13:3. Ex. R. Pearson Dep. 15:17-20.

**RESPONSE:  Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

105.    A fellow Logan University student Alyssa Trounter "made comments about him [Robert Kuhn] in her first trimester and that he made inappropriate comments that made her and her classmates uncomfortable" Ex. Q., Waske Dep. 21:5-10.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary**

27

Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").

Logan further objections that this purported statement of fact is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.

106.    Male Student invited Pearson over for beer when she was only 19 years old. Ex. R., Pearson Dep. 6:1-6.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

107.    Plaintiff Pearson was upset about the text messages sent by Male Student. Ex.

R., Pearson Dep. 7:2-19.

**RESPONSE: RESPONSE:  Admitted Plaintiff Pearson testified to this alleged fact at her deposition. However, this evidence is also refuted by Plaintiff Pearson's claims that she didn't believe that those text messages were "critical" evidence for the Honor Council to review or consider.**

108.     Plaintiff Pearson's brother and sister instructed Pearson to stay away from Male Student. Ex. R., Pearson Dep., 8:18-22.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

109.     Mary Pearson bought her daughter, Plaintiff Pearson, a can of mace to carry on campus because Plaintiff Pearson feared Male Student. Ex R., Pearson Dep. 10:2-8.

**RESPONSE: See objection to Paragraph 108.**

110.     Mary Pearson was concerned for Plaintiff Pearson's safety while she was on Logan University's campus. Ex. R., Pearson Dep. 10:18-22.

**RESPONSE: See objection to Paragraph 108.**

111.    Plaintiff Pearson was so scared that "she [Plaintiff Pearson] would go straight to class and then she'd leave [...] she actually quit her job in the library [...] she lost money from that." Ex. R., Pearson Dep. 11:13-19.

**RESPONSE: Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

112.    Plaintiff Pearson had wanted to attend Logan University from a young age. Ex. R., Pearson Dep.  11:23-12:6.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

113.    Plaintiff Pearson did not feel safe following her first meeting with Shelley Sawalich because Sawalich told Plaintiff Pearson "she had another harassment suit to take care of first." Ex. R., Pearson Dep. 12:24-13:25.

**RESPONSE: Admitted Plaintiff Pearson testified to this alleged fact at her deposition.**

114.     Plaintiff Pearson was afraid to attend class and was often distraught at the thought of having to be on Logan's campus. Ex. R., Pearson Dep. 16:12-22.

**RESPONSE: Admitted Plaintiff Pearson testified to this alleged fact at her deposition.**

115.     Plaintiff Pearson often told her mother she wished to not attend daily classes at Logan University because she was "afraid he [Male Student] is going to hurt me." Ex. R., Pearson Dep. 17:4-13.

**RESPONSE: Admitted Plaintiff Pearson testified to this alleged fact at her deposition.**

116.     Shelley Sawalich told Mary Pearson she was not allowed to talk during the Student Honor Council meeting. Ex. R., Pearson Dep. 24:13-24.


**RESPONSE: Admitted.**

117.     The Student Honor Council had not previously seen material that was presented by Plaintiff Pearson. Ex R., Pearson Dep. 25:4-11

**RESPONSE: Defendant objects to this purported statement of fact as it lacks a proper foundation that it is based upon personal knowledge.**

118.     However, the material reference in paragraph 117 was in Plaintiff Pearson's response to Shelley Sawalich report that was allegedly shared with the Student Honor Council. Ex. R., Pearson Dep. 25:12-18.

**RESPONSE: Defendant objects to this purported statement of fact as it lacks a proper foundation that it is based upon personal knowledge.**

119.     The Student Honor Council interrupted Plaintiff Pearson while she was

speaking. Ex. R., Pearson Dep. 25:19-26:10.

**RESPONSE: Admitted that the cited testimony establishes that the Honor Council interrupted Plaintiff Pearson when they had questions for her.**

120.     A Student Honor Council member told Plaintiff Pearson that "Were going to protect you. We want you to feel safe. We're going to separate you all. We'll suspend him. We'll just keep him away from you , whatever it takes." Ex. R., Pearson Dep. 26:20-27:3.

**RESPONSE: Admitted Plaintiff Pearson testified to this alleged fact at her deposition.**

121.     The Student Honor Council made offensive comments to Plaintiff Pearson, including the comment, approximately, that "In ten years from now, you'll look back at this and laugh." Ex. R., Pearson Dep. 27:16-28:1.

**RESPONSE: Defendant objects to this purported statement of fact as it is inadmissible hearsay evidence and lacks a proper foundation that it is based upon personal knowledge.**

122.     Shelley Sawalich accidentally sent Plaintiff Pearson an email intended for Boyd Bradshaw the night before the Student Honor Council decision was released. Ex. R., Pearson Dep. 30:18-31:6.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); _Lower Brule Sioux Tribe v. State of S.D._, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that**

**the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context.");  Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

123.     After the Student Honor Council meeting, Plaintiff Pearson did not want to meet with the administration of Logan University alone. Ex. R., Pearson Dep. 31:12-14.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context.");  Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

124.     Kimberly O'Reilly told Plaintiff Pearson that "Your fears are your fears. You need counseling." Ex. R., Pearson Dep. 33:1-8.

**RESPONSE: Admitted Plaintiff Pearson testified to this alleged fact at her deposition.**

125.     Mary Pearson went to see a medical doctor because she was becoming overwhelmed with what was happening to Plaintiff Pearson at Logan. Ex. R., Pearson Dep. 37:23-38:9.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See** *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.");** *Lower Brule Sioux Tribe v. State of S.D.***, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context.");** **Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that** *there is no genuine dispute as to any material fact. . . .***").**

126.     Only one security guard patrol the campus at a time. Ex. S., Demerath Dep. 7:20-22.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See** *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.");** *Lower Brule Sioux Tribe v. State of S.D.***, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context.");** **Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that** *there is no genuine dispute as to any material fact. . . .***").**

127.     It would take a security guard "ten minutes" to walk across Logan

University's campus. Ex. S., Demerath Dep. 11:24-12:3.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

128.     According to Boyd Bradshaw, "a student must provide a written complaint for a Title IX investigation to begin [...] as opposed to a verbal complaint" Ex. C., Bradshaw Dep. 34:24 - 35:4.

**RESPONSE: Denied. Dr. Bradshaw testified that it was his "understanding" that a written complaint was required and he did not know if an verbal complaint would be sufficient. Ex. C., Bradshaw Dep. 34:24 - 35:12**.

129.     Logan University provides the following, regarding the beginning of the Title IX Complaint process at Logan University:

   a.  "[It is required that] university employees who 'know or should now' about *possible* sexual harassment or sexual violence to report it to the Title IX Coordinator" (emphasis not added).   "Once a school has notice of possible sexual harassment [...] it should take immediate and appropriate

steps to investigate or otherwise determine what occurred and take steps reasonably calculated to end any harassment [...] These steps are the school's responsibility whether or not the student who was harassed makes a complaint or otherwise asks the school to take action" (emphasis not added). Ex. K. LOGAN - 000603-604.

b. The "Institution should 'own' the investigation [...] Parties should not be required to obtain, interview or ensure witnesses' presence [and] Parties should not be *required* to write their own statements" (emphasis added). Ex. K. LOGAN - 000683. Ex. V., Sawalich Dep. 44:8-9, 44:14.

c. "The traditional student conduct model of asking each party to write his/her own statement [...] and present his/her own case at a panel hearing may not satisfy Title IX mandates." Ex. K. LOGAN - 000628.

d. "The Investigator [Title IX coordinator in this case] will commence an investigation within seven business days of notification." Ex. L. LOGAN_000455- 459.

**RESPONSE:   Denied that Logan University "provides" the quoted materials. Admitted that the quoted materials are excerpted from Ex. K, a PowerPoint presentation utilized by Sawalich in educating Logan employees on Title IX matters.**

130.   Shelley Sawalich did not show at least one witness, Theresa Zemcuznikov Corbett, the notes taken at witness interviews.  Ex. F., Zemcuznikov Corbett Dep. 18:20-21.

**RESPONSE: Admitted that the witness testified in her deposition that she had not seen the interview notes.**

131.   According to the "Dear Colleague Letter, 04/04/2011," "Grievance

procedures must be prompt and equitable. Investigation must be adequate, reliable, and impartial." Ex. H. LOGAN - 000609.

**RESPONSE:  The exhibit speaks for itself.**

132.    Kristi Church is a student at Logan University and attended a class taught by Dr. Robert Kuhn.  Ex. E., Church Dep. 6:4-6.  Ex. E., Church Dep. 7:8-10.

**RESPONSE: Admitted.**

133.    Kristi Church contends the following regarding Robert Kuhn's behavior and the class's reaction to it:

a.  "He [Kuhn] had made a very rude and somewhat lewd comment to the class as a whole. And apparently somebody had gone up to the third floor about it and I guess turned him in for it." Ex. E., Church Dep. 8:6-11.

b.  "he [Kuhn] just made the comment of you guys are Try [sic] Ones and it's your first time, you'll be -- your papers are cherry red because it's your first time. It will be real easy to find your spots so [...] he [Kuhn] didn't need to [expand on the comment at all]. Everyone was kind of taken aback at that point in time [...] He meant it to be [crude in tone] [...] He was referencing popping cherry from because it's our virgin time taking finals. That was his reference. That's what everyone thought. That's what I thought at the time.  And it was just uncalled for and gross." Ex. E., Church Dep. 8:17 - 9:16.

c.  "Everybody was pretty disgusted [at Kuhn's comment].  There were a few people who had left and a few people who were -- I was pretty disgusted by it. I mean, it's inappropriate to say something like that [referencing Kuhn's

"cherry" comment].  I'm an older student but there are students in there who are 20, 21, you know, it's not appropriate." Ex. E., Church Dep. 11:3-8.

**RESPONSE:   Objection.  The alleged fact and its subparts are not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

134.    The Student Honor Council for Logan University is required to apply the preponderance of the evidence standard. Ex. K. LOGAN - 000633, citing "Questions and Answers on Title IX and Sexual Violence, A-5, p.3; C-5, p. 12-14.

**RESPONSE: Defendant objects to this purported statement of fact as it is unsupported by the evidence and calls for a legal conclusion.**

135.     Logan provides that a "Complainant's word alone [is] sufficient to sustain burden of proof - preponderance of the evidence" because "A single instance of sexual harassment is sufficiently severe to create a hostile environment" (citing Dear Colleague Letter, p.3). Ex. K. LOGAN - 000679.

**RESPONSE: Defendant objects to this purported statement of fact as it is**

unsupported by the evidence and calls for a legal conclusion.

136.     Robert Kuhn sat on the Honor Council that heard Plaintiff Pearson's case. Ex. I., Kuhn Dep. 10:5-9.

**RESPONSE: Admitted.**

137.     Robert Kuhn, in stating that he does not have to do preponderance of evidence standard for Logan University Student Honor Councils, contends the following: "This is a process, as I understand it, that we're just trying to determine the truth. We've got two sides of a story and we have some witnesses [...] we're not a legal body. We don't have to do preponderance of the evidence or any of those other legal things that you guys in this room know. We're just trying to figure it out, get to the truth." Ex. I., Kuhn Dep. 16:21 - 17:3.

**RESPONSE: Objection. This purported statement of fact mischaracterizes the evidence. Mr. Kuhn testified to the quoted statements in response to questions as to the role of Sawalich, as investigator, and as to whether she expressed any of her conclusions to the Honor Council. Ex. I., Kuhn Dep. 16:4 - 17:8. Denied that Mr. Kuhn testified that the Honor Council did not in fact apply the preponderance of the evidence standard in reaching the decision at issue in this case.**

138.     Robert Kuhn admitted that he never had to "undergo any training specific to being on the Student Honor Council." Ex. I., Kuhn Dep. 11:23-25.

**RESPONSE:   Admitted. However, Mr. Kuhn testified he received Title IX training.**

139.     Robert Kuhn admitted that there were no special qualifications for Student Honor Council members. Ex. I., Kuhn Dep. 13:18-23.

**RESPONSE:  Denied. Mr. Kuhn testified that to his knowledge the email inquiry he received did not describe any qualifications that a volunteer would need.  Ex. I, Kuhn Dep. 13:18-23.**

140.     Positions on the Student Honor Council, including Robert Kuhn's, were not "appointed" but rather given to volunteers. Ex. I, Kuhn Dep. 10:10-16.

**RESPONSE: Admitted.**

141.     During Plaintiff Pearson's Student Honor Council hearing, members were not advised of any previous precedent for how Honor Council members should make a decision. Ex. I, Kuhn Dep. 24:21-24.

**RESPONSE: Denied. Mr. Kuhn testified that he was not "informed of any history of Honor Council proceedings," with no reference to the term "precedent." Ex. I, Kuhn Dep. 24:21-24. Denied that "previous precedent" in any way limits or constrains the Honor Council's ability to determine each individual case based upon its unique set of facts and circumstances presented. Defendant denies any insinuation that Logan acted improperly in handling the Plaintiff's complaints.**

142.     James Paine was the Dean of Students and Title IX Coordinator until approximately 2015.  Ex. C., Bradshaw Dep. 9:9-15.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that**

**the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context.”); Fed. R. Civ. P. 56(a) (“The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact*. . . .”).**

143.    James Paine was “terminated” from his job at Logan University. Ex. C., Bradshaw Dep. 10:20-23.

**RESPONSE: See objection to Paragraph 142.**

144.    Reasons for Paine’s “termination” from his position at Logan University included the following:

    a.    “Lack of follow-through [and] availability for the students in his position.” Ex. C., Bradshaw Dep. 11:1-3.

    b.    Failure to meet deadlines. Ex. C., Bradshaw Dep. 11:3-4.

    c.    Choice not to complete a “performance improvement plan.” Ex. C., Bradshaw Dep. 11:5-6.

**RESPONSE: See objection to Paragraph 142.**

145.    In addition to the aforementioned reasons, Paine’s termination was due to, *inter alia*, the following, as expressed by Boyd Bradshaw:

    a.    “[W]e would have things that he would need to complete in an appropriate amount of time. There were also some complaints from others across campus that he wasn't there. You know, he would kind of come and go as he pleased. I mean he -- you know, he was required to have a set schedule but, you know, there's times when someone may need him and they couldn't find him. And what was happening is, you know -- you know,

we -- you know, a lot of these things people don't -- you know, as a supervisor, I mean nobody was coming to me and telling me. If they don't come and tell me, I don't know these things are happening. So as soon as some people started coming to me, and then I started micromanaging the situation a little bit further." Ex. C., Bradshaw Dep. 11:14 - 12:5.

**RESPONSE: See objection to Paragraph 142.**

146.    Logan employees began coming to Boyd Bradshaw to express that "he [Paine] is never there [...] he [Paine] would never take care of [duties] [...] He [Paine] had other things that was more of a priority his work life at Logan." Ex. C., Bradshaw Dep. 12:8-21.

**RESPONSE: See objection to Paragraph 142.**

147.    A lawsuit was filed against Logan University's administration by the Logan University Alumni Association.  Ex. C., Bradshaw Dep. 27:6-9.

**RESPONSE: See objection to Paragraph 142.**

148.    According to Boyd Bradshaw, it was not "important [...] to be well versed in Title IX." Ex. C., Bradshaw Dep. 33:22 - 34:1.

**RESPONSE:  Denied. Dr. Bradshaw testified that in his position at Logan it was not important for him to be well versed in Title IX as he was not the Title IX Coordinator.**

149.    On February 8, 2016, Sawalich e-mailed Christine Reed and stated, "I still do really need to talk with you and would be interested in scheduling a time to talk via phone" Ex. UU, LOGAN - 000110.

**RESPONSE: Admitted.**

150.    On February 16, 2016, Sawalich e-mailed David Brickey and asserted that she "ha[d] a phone conversation scheduled with a student" Ex. VV, LOGAN - 000141.

**RESPONSE: Admitted.**

151.    James Paine had a conversation with Kim Hartmann in which they discussed the following:

a.    "He [James Paine] had -- and I remember this conversation distinctly because it was just stunning, like shocking what he was telling me. He had said that he one or more girls that had come to him and complained about sexual harassment things in nature.   But it related to a board member. And so he [James Paine] would ask the girls to go upstairs and speak with Doctor George Goodman [former president of Logan University who is now deceased]. And apparently [Goodman's] wife who also worked at the college at the time had intervened and told [...] more than one [...] gir[l] that if they went any further with the matter they would have -- she would have them expelled [...] I guess I was stunned. I was shocked at what he was telling me [...] Mrs. Doctor Goodman would intervene. Tell them that if they were to speak to anybody about the incident, she would have them expelled and they would not be able to basically apply or get into any other chiropractic college." She further clarifies that she did not further report this because "Doctor Goodman was [...] very forceful [...] It wouldn't have ended well." Ex. N, Hartmann Dep. 9:22-18:17.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus,**

is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record...reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

152.    James Paine asserts the following:

    a.  "[He] do[es] not [recall] This specific conversation [between Dr. Hartmann and I]." Ex. T, Paine Dep. 44:8-9.

    b.  "[He] do[es]n't recall anybody bringing sexual harassment complaints to [him]." Ex. T, Paine Dep. 44:25-45:1.

    c.  "[He] do[es]n't recall the conversation [with Dr. Goodman or his wife]" about having students expelled if they were to bring complaints of sexual harassment or assault. Ex. T, Paine Dep. 46:14-15.

    d.  He does not "recall" ever telling girls to go see Dr. George Goordman. Ex. T, Paine Dep. 47:12.

    e.  He does not "recall" ever hearing any complaints about a Logan board member. Ex. T, Paine Dep. 47:15.

    f.  He "can't recall" ever handling any Title IX investigations or the number of

Title IX investigations he may have handled. Ex. T, Paine Dep. 12:15-17.

    g.   He "do[es]n't recall a lot of detail about" his own performance improvement plan. Ex. T, Paine Dep. 18:15-16.

    h.   He "cannot recall" any significant detail about changes stemming from Brandi Kostal's Title IX complaint handled by the Office of Civil Rights. Ex. T, Paine Dep. 39:12-14.

    i.   There "aren't a lot of things about [Paine's] time at Logan [he] can recall." Ex. T, Paine Dep. 42:1-2.

**RESPONSE: See objection to Paragraph 151.**

153.   Logan University contends the following: "As a career, the field of chiropractic provides a great quality of life. Doctors of Chiropractic who were surveyed in the Chiropractic Economics 2016 Salary and Expense Survey report flexible work hours and growing compensation. According to the survey, the average total compensation for a Doctor of Chiropractic in 2016 was just over $147,000. This is up from the reported total compensation in 2015 ($122,000). In addition, the future of chiropractic is bright. Employment of chiropractors is projected to grow 17% from 2014-2024, faster than average for all occupations, according to the Bureau of Labor Statistics, U.S. Department of Labor." Ex. Y.

**RESPONSE:  Denied that Logan University "contends" the quoted materials. Admitted that the quoted materials appear to be excerpted from a Logan website but lacks sufficient foundation or authentication to constitute admissible evidence.**

154.   One Logan student insisted that Plaintiff would "appreciate" Male Student's demeanor if she were older. Ex. O, Affidavit of Morgan Pearson, at ¶ 286.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See** *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.");** *Lower Brule Sioux Tribe v. State of S.D.***, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context.");** **Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that** *there is no genuine dispute as to any material fact***. . . .").**

155.    Mei Ling Robin reported that "interactions with [Male Student] made her stay from him. He was asking to get drinks and to come over, but she said no." Ex. XX. LOGAN - 000243.

**RESPONSE: Admitted. This is an excerpt from Sawalich's interview with Mei Ling Robin, one of fifteen witness interviews taken by Sawalich.**

156.    Mei Ling Robin also reported that "[Male Student] would always follow her or one of the girls in class." Ex. XX. LOGAN - 000243.

**RESPONSE:  Admitted. This is an excerpt from Sawalich's interview with Mei Ling Robin, one of fifteen witness interviews taken by Sawalich.**

157.    Mei Ling Robin additionally noted that "[Male Student] has taken it further with [Plaintiff Pearson] - trying to get girls to go out with him" and that he is "very pushy," "always around," "creepy," and "like a stalker watching." Ex. XX. LOGAN - 000243.

**RESPONSE: Admitted. This is an excerpt from Sawalich's interview with Mei Ling Robin, one of fifteen witness interviews taken by Sawalich.**

158.    Because of this, Mei Ling reported that "if [Male Student] comes around, she would leave and [make] sure she was not in his lab group." Ex. XX. LOGAN - 000243.

**RESPONSE: Admitted. This is an excerpt from Sawalich's interview with Mei Ling Robin, one of fifteen witness interviews taken by Sawalich.**

159.    Mei Ling reported that, "[Male Student] would pop up and talk to her and won't leave her alone. She's seen him around school and doesn't want to be in any general vicinity or potential of having other classes with him." Ex. XX. LOGAN - 000243.

**RESPONSE: Admitted. This is an excerpt from Sawalich's interview with Mei Ling Robin, one of fifteen witness interviews taken by Sawalich.**

160.    Mei Ling reported the following: "an interaction with their classmate Chrissy Reed [...] within the first week he'd gone up to every girl and tried to get them to go out and would not stop even when they said no [...] he makes all of the girls uncomfortable and they don't like it. [...] they don't want it and that they can flat out say no and he won't stop." Ex. XX. LOGAN - 000243.

**RESPONSE: Admitted. This is an excerpt from Sawalich's interview with Mei Ling Robin, one of fifteen witness interviews taken by Sawalich.**

161.    In "pull[ing] together a Student Honor Council" to hear Plaintiff Pearson's case, Shelley Sawalich e-mailed only Gene Spilker, Erika Hackett, Robert Kuhn, Nichole Nichols, Lori Fulford, and Haydee Manoni.  Ex. ZZ. LOGAN - 000209.

**RESPONSE: Admitted that the named persons were the recipients of the Ex. ZZ email relating to a Student Honor Council meeting.**

47

162.    In a presentation given to Logan University employees entitled *What You Need to Know About Title IX*, Shelley Sawalich presented the following:

a. "Once a school has notice of possible sexual harassment of students [...] it should take immediate and appropriate steps to investigate or [...] end any harassment, eliminate a hostile environment [...] and prevent harassment from occuring again. These steps are the school's responsibility whether or not the student who was harassed makes a complaint or otherwise asks the school to take action." Ex. K, LOGAN - 000604. (emphasis in original).

b. The "Institution should 'own' the investigation [...] Parties should not be *required* to write their own statements." Ex. K, LOGAN - 000683. (emphasis in original).

**RESPONSE:  Admitted that the quoted materials are excerpted from Ex. K, a PowerPoint presentation utilized by Sawalich in educating Logan employees on Title IX matters. See infra at  162.**

163.    Logan University's "Procedures for Campus Disciplinary Action" further explains, "The Investigator [in this case, Shelley Sawalich] will commence an investigation *within seven business days of notification*" Ex. AAA, LOGAN - 000455. (emphasis added).

**RESPONSE:  Admitted that the quoted materials are excerpted from Ex. AAA.**

164.    The first time that Shelley Sawalich met with Male Student was January 9, 2016. Ex. BBB, LOGAN - 000049.

**RESPONSE:   Denied.  The evidence established Sawalich met with the Male**

Student on January 8, 2016.

165.    On January 19, 2016, Shelley Sawalich wrote to Male Student: "I noticed that you went ahead and completed the SaVE Act quiz [...] but you only scored 5/8.  You must score 7/8 for completion [...] please rewatch the video [...] and retake the quiz [...] to achieve the required 7/8 score." Ex. CCC, LOGAN - 000056.

**RESPONSE: Admitted.**

*Additional Facts Relating to Ms. Pearson's Situation*

166. From Ms. Pearson's first-hand experience, and from talking to numerous male and female students and administrators at Logan University, it became apparent to her that, for at least the last several years, Logan has followed a pattern and practice of grossly failing to protect its female students from stalking and sexual harassment to such an extent that students discussed the fact that Logan did not protect its female students. Ex. O, Affidavit of Morgan Pearson, at ¶ 34.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

167. Part of the attitude Ms. Pearson noticed, in her own experience, and in talking to others at Logan University was that it was permissible for male students to take advantage of, and to, in some cases, sexual harass and/or commit worse acts of sexual violence against Logan's female students. *Id.* at ¶ 35.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

168. During Ms. Pearson's time at Logan, she personally knew multiple female students who told her that complaining of sexual harassment and/or worse acts of sexual violence suffered at the hands of a male student would be futile. *Id.* at ¶ 36.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

169. It was "well known" on Logan's campus, from Ms. Pearson's experience talking to other male and female students, that Logan would not protect its female students from male sexual aggression. *Id.* at ¶ 37.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

170. From Ms. Pearson's perspective, and in talking to other male and female students, a male student would be allowed to "get away with" stalking, harassing or committing an even worse act of sexual violence against a female student. *Id.* at ¶ 38.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

171. From Ms. Pearson's perspective and the perspective of other students that I talked to on campus at my time at Logan, Logan fostered a culture of permitting sexual violence against its female students, having a "boys will be boys," attitude. *Id.* at ¶ 39.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

172. The atmosphere at Logan was noticeably hostile and oppressive towards female students. *Id.* at ¶ 40.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

173. During Ms. Pearson's time at Logan, she heard multiple accounts of female students complaining of sexual harassment and/or sexual battery and/or sex-based stalking at the hands of a male student, and likewise heard that Logan, upon hearing such complaints, would take no action to protect the female students. *Id.* at ¶ 41.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

174. Also during Ms. Pearson's time at Logan, she personally, along with multiple other female students, had demeaning sex-based comments made towards her by other students and Logan's administrators. *Id.* at ¶ 42.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

175. Ms. Pearson heard of multiple instances where other female students were sexually harassed and/or sexually battered by Logan professors and/or Logan administrators

and nothing was done to protect those female students. *Id.* at ¶ 43.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

176. During her time at Logan, in addition to Ms. Kirkpatrick, another student, Mei Ling Robin, suffered threatening behavior by the same 31-year-old "Male Male Student" that harassed, stalked and battered Ms. Pearson and Ms. Kirkpatrick. *Id.* at ¶ 44.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

177. Mei Ling Robin was frightened by such behavior, reported the same to Logan's administrators, and was disappointed and scared that nothing was done to protect her from the Male Student. *Id.* at ¶ 45.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

178. In addition to the Male Student's harassment and sexual battery of multiple students, she knew of at least one other male student who also sexually harassed and/or stalked multiple female students; although she knows that the other female students complained to Logan about that other student, nothing was done by Logan's administration to protect those female students. *Id.* at ¶ 46.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

179. Also during her time at Logan, Plaintiff knew of several other female students who complained of sexual harassment, or assault due to the behavior of other individuals yet had their complaints ignored, minimized, inadequately addressed or used as a basis to force the victimized student to have to withdraw from Logan. *Id.* at ¶ 47.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

180. In other instances, those female students simply did not report such complaints in light of their observance of Logan's conduct toward those who had – complete indifference, if not a "blame the victim" mentality.  *Id.* at ¶ 48.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay. Furthermore this alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

*Ms. Pearson's Initial Victimization by the "Male Student"*

181. At all relevant times, Ms. Pearson was and is 5 foot 3 inches tall and of slight build; she was under 21 at all times that she interacted with the Male Student.  *Id.* at ¶ 49.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that**

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

182. The Male Student, at all relevant times, was at least 31 years old, 6 foot 1 inch tall and weighed at least 220 pounds; he was well-muscled and of imposing stature; Ms. Pearson was frightened by his size and believed he easily could have hurt her and/or forced her to engage in illicit behavior if she ever were alone with him without protection. *Id.* at ¶ 50.

RESPONSE:  Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.

183.  The Male Student first approached Ms. Pearson on September 8, 2015.  *Id.* at ¶ 51.

RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

184. From almost her very first interaction with the Male Student, Ms. Pearson was intimidated by his size, his age, and his aggressive and disturbing demeanor towards her.*Id.* at ¶ 52.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

185. On the first day of classes, while Ms. Pearson was giving her phone number to another female student, the Male Student abruptly interrupted the two of us, put his phone in my face, and told her to give him her number.  *Id.* at ¶ 53.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

186. Ms. Pearson was taken aback by this behavior, and was "off guard"; due to her surprise at the Male Student's forward approach and the fact that she did not at the time anticipate harm coming to her by giving the Male Student her number, she gave him her telephone number.  *Id.* at ¶ 54.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

187. Almost immediately thereafter, a mere two days later, beginning on September 10, 2015, the Male Student began sending Ms. Pearson lewd, offensive text messages.  *Id.* at ¶ 55.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact**

contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.

188. Initially, the Male Student told Ms. Pearson that he "wanted to form a study group"; however, it became clear to her that by "study group," he only meant him and Ms. Pearson. *Id.* at ¶ 56.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

189. When Ms. Pearson told him that she would not want to study with him, especially alone, and especially because they had not even covered much substantive material in class, he responded in a disturbing manner, implying that he instead wanted to date Ms. Pearson, saying, among other things, "it doesn't have to be serious." *Id.* at ¶ 57.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

190. Ms. Pearson immediately realized that the Male Student was propositioning her in some manner, and felt uncomfortable and frightened, especially in light of his size, age, and the fact she would have to be in class with him for at least the semester. *Id.* at ¶ 58.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact**

contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.

191.  Ms. Pearson did not respond to his request to form a two-person "study group." *Id.* at¶ 59.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

192.  Perhaps realizing the awkwardness of her silence, the Male Student then texted her "I don't want to sound creepy."  *Id.* at ¶ 60.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

193.  Because the Male Student sounded "creepy," Ms. Pearson tried to ignore him.  *Id.* at ¶ 61.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant**

shows that *there is no genuine dispute as to any material fact. . . .*"). **Logan further**

**objections that this alleged fact is not supported by competent evidence and Logan hereby**

**incorporates its Motion to Strike Plaintiffs' Affidavits.**

194. In response to her silence, he then texted her again, inviting her to meet him for drinks.  *Id.* at ¶ 62.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence**

**and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact**

**is based on inadmissible hearsay.**

195. At that point, Ms. Pearson already was disturbed and frightened by his behavior, so texted him back, telling him that he did, in fact, sound "creepy" and telling him that she did not want to meet him for drinks.  *Id.* at ¶ 63.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is**

**immaterial to the Court's consideration of the Logan's Motion for Summary Judgment.**

**See** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986) ("Only disputes over facts that**

**might affect the outcome of the suit under the governing law will properly preclude the**

**entry of summary judgment.");** *Lower Brule Sioux Tribe v. State of S.D.*, **104 F.3d 1017(8th**

**Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties**

**disagree on factual matters, none of the disputes is outcome determinative once put in legal**

**context.");** **Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant**

**shows that** *there is no genuine dispute as to any material fact. . . .*").

**Logan further objections that this alleged fact is not supported by competent**

**evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

196. Ms. Pearson was hoping that would end the discussion, but the very next morning,

the Male Student, unprompted, texted her again asking her if she "wanted to study up on some knowledge?"  *Id.* at ¶ 64.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

197. Ms. Pearson ignored this text but, in light of the fact that the Male Student was so much older than her, knew it, but had invited her to drinks anyway, and then sent the odd follow-up text the following morning, she became increasingly unnerved by the Male Male Student's presence.  *Id.* at ¶ 65.

**RESPONSE:  Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*"). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

198. Doing nothing further to invite it, over the following weeks, the Male Student acted in an even more-threatening manner, texting Ms. Pearson asking her all sorts of inconsequential questions he could have learned from other sources.  *Id.* at ¶ 66.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

199. Ms. Pearson ignored all of those texts, yet he kept sending them over the course of several weeks; in addition, almost as if in retaliation for her ignoring his multiple text messages, the Male Student, after every class that he had with Ms. Pearson, every week, would go well out of his way in an attempt to walk with her to her car or to her work-study position at the campus library, hurriedly leaving with her if she left quickly and/or lingering for excessive periods of time if she attempted to wait for the Male Student to leave before her.  *Id.* at ¶ 67.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

200. In short, it became extremely obvious that the Male Student was following Ms. Pearson around, essentially all over campus, at almost all times.  *Id.* at ¶ 68.

**RESPONSE:  Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

201. During those times that he would essentially follow Ms. Pearson to her car or to the library; every single time, she made it extremely clear to the Male Student that his advances, conversation, and mere presence was unwanted and threatening to her.  *Id.* at ¶ 69.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

202. No matter what Ms. Pearson did, he would simply disregard her asking him, or telling him, to leave her alone, and would continue following her and commenting on random things; he acted as though he almost enjoyed that he made Ms. Pearson extremely uncomfortable, and undoubtedly knew it so far as Ms. Pearson could tell.  *Id.* at ¶ 70.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

203. Ultimately, Ms. Pearson was so frightened by the Male Student's pervasive behavior that she would wait for a friend to accompany her every time before leaving class for a period of months.  *Id.* at ¶ 71.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

204. The Male Student's pervasive, unwelcome, and intimidating stalking off Ms. Pearson began as soon the second week of September and persisted, along with "random," run-ins with the Male Student (which all played out similarly) at different spots throughout campus, well into January and February of 2016, or more than five straight months.  *Id.* at ¶

72.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

205. Notably, his harassment and following Ms. Pearson continued well after she complained about the Male Student's behavior to Dean Sawalich on December 9, 2015, for a period of multiple months thereafter. *Id.* at ¶ 73.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

206. Approximately one month after her initial exchange with the Male Student, Ms. Pearson began her employment in a "work-study" position in Logan's library.  *Id.* at ¶ 74.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact*. . . ."). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

207. Shortly after she began working at the library, the Male Student also began regularly appearing at the library, appearing in a manner that very closely coincided with *all* of Ms. Pearson's regular work shifts.  *Id.* at ¶ 75.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

*The Male Student's Incessant Stalking Of Ms. Pearson*

208. While it began with two shifts the first week, after just two weeks, the Male Student's attendance in the library began to coincide with all three of Ms. Pearson's work shifts, such that the Male Student was in the library nearly all of the time that she was assigned to work there.  *Id.* at ¶ 76.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

209. No matter how her work-study schedule was changed, the Male Student eventually would begin coming into the library for practically every single shift that Ms. Pearson worked. *Id.* at ¶ 77.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

210. The Male Student, in fact, very infrequently went to the library to actually perform any library-related activity.  *Id.* at ¶ 78.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

211. When the Male Student was in the library, his only real focus seemed to be on Ms. Pearson, he spent an inordinate amount of his time attempting to sit next to her, despite her moving every time that he did so, or strategically moving next to a table in the library known to be the "worst" (because the air-conditioning blew directly over the table making it extremely cold), in the hope the Male Student would not sit there (which he nonetheless would).  *Id.* at ¶ 79.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

212. In short, the Male Student came into the library almost every time Ms. Pearson was there, and while he was in there, he would spend almost all of his time staring at Ms. Pearson or getting so close to her as to make me extremely uncomfortable. *Id.* at ¶ 80.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

213. In addition to all of his other behavior, following her around campus, his almost constant presence in the library, focusing on Ms. Pearson, made it so that there was essentially nowhere she could go on campus to avoid the Male Student. *Id.* at ¶ 81.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

214. It seemed that, wherever Ms. Pearson went, the Male Student was there, following her, glaring at her, and constantly making her extremely uncomfortable and afraid for her safety. *Id.* at ¶ 82.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

215. This behavior continued, with the Male Student essentially following and sitting very near her, almost every single day that she was in the school library, on a daily basis, from the first week of September 2015 until at least January 2016, a nerve-wracking period of more than sixteen weeks.  *Id.* at ¶ 83.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's prior sworn testimony and should be disregarded by the Court.**

216. Outside of the library, the Male Student's stalking behavior and incessant

attempts to follow Ms. Pearson out of class continued, gradually taking an increasingly aggressive tenor.  *Id.* at ¶ 84.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

217. In addition to all of the above, for instance, the Male Student would even engage in his prolonged, threatening staring at Ms. Pearson in certain classroom settings that would allow him to do so. *Id.* at ¶ 85.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

218. Inside and outside of class, in the library and multiple other locations, the Male Student would follow Ms. Pearson and glare at her. *Id.* at ¶ 86.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

219. In addition, on multiple, various occasions, the Male Student would come up to Ms. Pearson and interact with her in a threatening way when she would converse with other male or female students, almost as if he were jealous. *Id.* at ¶ 87.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

220. As a result of all of this behavior, Ms. Pearson was in near-constant fear of assault while on campus. *Id.* at ¶ 88.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

*The Male Student's Sexual Assault of Ms. Pearson and Other Particularly Egregious Conduct*

221. On November 12, 2015, the Male Student sexually assaulted Ms. Pearson essentially *in public,* inside a classroom at Logan, while surrounded by other students. *Id.* at ¶ 89.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

222. On that day, the Male Student and Ms. Pearson were in class together in the embalming room of the cadaver lab. *Id.* at ¶ 90.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact**

contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.

223.  They were surrounded by several other students. *Id.* at ¶ 91.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

224.  As an instructor was reviewing and illustrating separate portions of a cadaver, the students crowded around the display table, although not to such an extent that touching one another could not easily be avoided. *Id.* at ¶ 92.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

225.  Indeed, Ms. Pearson touched no one else, nor did anyone else touch Ms. Pearson during the cadaver demonstration. *Id.* at ¶ 93.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

226.  At one point, however, Ms. Pearson was standing and looking at the cadaver when she felt a man press and hold his crotch against her buttocks and continue standing against her until she was able to move away as quickly as she was able, which,

excruciatingly, was far from immediate in that the cadaver was directly in front of her so Ms. Pearson literally could not move away until other students to her side shifted to give her more room. *Id.* at ¶ 94.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

227. Disgusted and violated, Ms. Pearson turned around to see who had been standing behind her, pinning her against the table in such an intrusive and demeaning manner. *Id.* at ¶ 95.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

228. Ms. Pearson was horrified, but not necessarily surprised, to find that it was the Male Student who had been standing behind her. *Id.* at ¶ 96.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

229. The room was crowded and an instructor was speaking so Ms. Pearson did not feel it was appropriate to do anything more than she did, recoil in disgust and get as far away

from the Male Student as possible under the circumstances. *Id.* at ¶ 97.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

230. The experience of the Male Student pressing his groin up against her was humiliating, degrading, and further caused Ms. Pearson to fear any contact with the Male Student who had now gone so far as to sexually assault her. *Id.* at ¶ 98.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

### *Mr. Pearson's Pleas to Logan for Protection*

231. Victimized and traumatized, Ms. Pearson did not know where to turn for relief, mistakenly believing she was not entitled to help unless and until the Male Student actually did something even more seriously violent to her, and then only through the criminal justice system. *Id.* at ¶ 99.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

232. There was little, if any, posting on campus of any literature regarding a female student's right to Title IX protection against harassment, what it comprised, who to contact if one was a victim of the same, or where to go if one were in need of help due to

sexual harassment. *Id.* at ¶ 100.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

233. Ms. Pearson lived in fear for months, quite frankly, without knowledge of the existence of Title IX or Logan's obligation to provide her protection and counseling pursuant to it. *Id.* at ¶ 101.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . ."*). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

234. Through "word of mouth," after confiding in enough people (which alone was difficult) about what had been happening to her, she learned about Title IX and that Logan was "supposed" to do something. *Id.* at ¶ 102.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

235. Right around the same time Ms. Pearson learned of the fact Logan was at least entitled to provide her some protection, the situation with the Male Student also began to grow even worse. *Id.* at ¶ 103.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*"). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

236. On December 8, 2015, after Ms. Pearson already had suffered nearly ten straight weeks of being incessantly stalked by the Male Student, including being sexually assaulted, she learned from another student that the Male Student had set up a meeting, apparently with a dean, in order to switch out many of his classes and into multiple classes for which Ms. Pearson had registered. *Id.* at ¶ 104.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

237. According to the source of this information, the Male Student was attempting to have his entire schedule for the next trimester coincide with Ms. Pearson's. *Id.* at ¶ 105.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

238. Upon hearing this, Ms. Pearson decided to meet with Logan's administration, and immediately went to the Student Affairs Office. *Id.* at ¶ 106.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").* Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

239. Because Sawalich was not in her office, Ms. Pearson instead met with Sandra Perriello, Associate Dean of Logan. *Id.* at ¶ 107.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . ."*). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

240. Ms. Pearson told Perriello virtually all of the circumstances that had unfolded between her and the 31-year-old Male Student, including his aggressive text-messaging, his virtually non-stop stalking of her in the library and virtually everywhere else on campus, his sexually assaulting her in class, his non-stop stalking thereafter, and his attempt to schedule all of his classes to coincide with hers. *Id.* at ¶ 108.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

241. Ms. Pearson told Perriello that she now was in constant fear that the 6'1, 220lb. Male Student was going to do something to her, such as sexually assault her again, but in a much worse fashion, at nearly any moment, if someone did not intervene to protect her. *Id.* at

¶ 109.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

242. Exhibiting obvious concern about the situation, Perriello stated that she wished Ms. Pearson had come forward earlier. *Id.* at ¶ 110.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

243. Ms. Pearson explained that she was afraid of retaliation and did not think that Logan was available to help her. *Id.* at ¶ 111.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

244. After hearing Ms. Pearson's complete story, citing Ms. Pearson's own rhetorical question as to whether she had been sexually harassed, Perriello stated: "you *have* been sexually harassed." *Id.* at ¶ 112.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that**

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

*Despite Her Extensive Oral Complaint, Logan Requires Ms. Pearson to Write Out All of the Circumstances She Had Reported Before Taking Any Action*

245. Perriello thanked Ms. Pearson for reporting the events, and then asked if Ms. Pearson would write down any portion of what Ms. Pearson had just orally recounted in detail to Perriello. *Id.* at ¶ 113.

RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 17.

246. In making this request, Perriello indicated that Ms. Pearson would not technically be "reporting" anything – and Perriello could not look into the situation further – unless and until Ms. Pearson had submitted a written report re-summarizing the entirety of the situation for Perriello. *Id.* at ¶ 114.

RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").

Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

247. Perriello indicated very clearly that she would not be taking any further action until Ms. Pearson had submitted that report. *Id.* at ¶ 115.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

248. Dejected, but feeling she had no other avenue of relief, Ms. Pearson left Perriello's office to write down everything she had just told Perriello. *Id.* at ¶ 116.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . ."). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

*Ms. Pearson Meets With Dean Sawalich*

249. When Ms. Pearson met with Sawalich the next day, on December 9, 2015, she told Sawalich all of the aforementioned history of the odd and threatening behavior by the Male Student, including but not limited to: the Male Student had attempted to take her out to drinks, despite her obvious rejections of his attempts to socialize with her, Ms. Pearson could go almost nowhere on campus without the Male Student finding and approaching her, the Male Student stalked her incessantly while she was in the library during her work-study hours, the Male Student had pinned her against a table and sexually assaulted her in the cadaver lab in the middle of class, the Male Student had acted aggressive and irrationally possessive when he saw Ms. Pearson talking to another male student, and that most recently, the Male Student reportedly had approached the school's registrar in order to coordinate his entire schedule for the upcoming trimester with that of Ms. Pearson's. *Id.* at ¶

117.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

250.  Somewhat alarmingly to Ms. Pearson, Sawalich tried her best to downplay the situation, minimized its importance, but was "not so sure" (contrary to Perriello's judgment) that Ms. Pearson had suffered sexual harassment, and otherwise seemed to not pay very close attention to Ms. Pearson throughout the interview. *Id.* at ¶ 118.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

251.  After Ms. Pearson had conveyed the details of her ordeal with the Male Student and explained why she had become so fearful, Sawalich simply stated that she "had to look into [the situation]," and asked Ms. Pearson whether she had witnesses. *Id.* at ¶ 119.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

252.  Like Perriello, Sawalich then requested that Ms. Pearson reduce the oral concerns she had just conveyed to Sawalich in writing, and to send her a detailed report of the incident, including dates and all witness names and/or any other relevant statements supporting her account of the situation. *Id.* at ¶ 120.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Logan's Statement of Uncontroverted Material Facts No. 29-30.**

253. When Ms. Pearson emphasized that she now was in fear of the Male Student at nearly all times that Ms. Pearson was on campus, including both before and after that very meeting, Sawalich did not even acknowledge what obviously was a plea for some immediate action, and instead simply responded that she could not guarantee Ms. Pearson's anonymity during any investigation, but that she would e-mail Ms. Pearson prior to meeting with the Male Student to allow her to be on guard for any acts of retaliation. *Id.* at ¶ 121.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

254. When Ms. Pearson more directly asked if that was all that Sawalich could do at the time, Sawalich told her that she would not have time to really look into Ms. Pearson's case until January, 2016, as she had another harassment case "to take care of," that would take the remainder of that semester. *Id.* at ¶ 122.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

255. Later, when Ms. Pearson asked for a couple-day extension of time to prepare the report Sawalich apparently required of her before Sawalich would take any action, Sawalich told Ms. Pearson that any delay meant that Sawalich could not investigate the complaint at all until at least January 2016. *Id.* at ¶ 123.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

*The Male Student's Harassment of Ms. Pearson Persists After Her Report to Logan*

256. Following Ms. Pearson's initial visit to Logan administration on December 8th, 2015, the Male Student continued his stalking behavior, growing bolder on an almost daily basis during the last few weeks of December. *Id.* at ¶ 124.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

257. For instance, on one occasion in early December following Ms. Pearson's reporting the situation to Sawalich, the Male Student was walking in front of Ms. Pearson on her way into class. *Id.* at ¶ 125.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact*. . . .").**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

258.  The Male Student then held the door shut as Ms. Pearson tried to enter. *Id.* at ¶ 126.

**RESPONSE: See objection to Paragraph 257.**

259.  Not amused, Ms. Pearson told him to let her into the class and that she was "not joking around." *Id.* at ¶ 127.

**RESPONSE: See objection to Paragraph 257.**

260.  To this, finally opening the door, the Male Student responded that he thought she was "into joking around." *Id.* at ¶ 128.

**RESPONSE: See objection to Paragraph 257.**

261.  On subsequent occasions, instead of simply staring at Ms. Pearson as he would stalk her in the library, the Male Student began walking into the library and, without any invitation to do so, taking a seat at whichever table in the library Ms. Pearson was studying at.*Id.* at ¶ 129.

**RESPONSE: See objection to Paragraph 257.**

262.  This happened multiple times, with the Male Student simply sitting down at Ms. Pearson's table, and Ms. Pearson immediately having to move away. *Id.* at ¶ 130.

**RESPONSE: See objection to Paragraph 257.**

263.  Often, the Male Student would say "can I sit at your [Ms. Pearson's] table" while numerous other tables in the library where unoccupied. *Id.* at ¶ 131.

**RESPONSE: See objection to Paragraph 257.**

264.  Despite telling him "no" every time; the Male Student would simply sit down anyway, forcing Ms. Pearson to have to move; this happened numerous times after Ms. Pearson had reported his behavior to Sawalich. *Id.* at ¶ 132.

**RESPONSE: See objection to Paragraph 257.**

265.  In fact, at one point, clearly making a game of his stalking, after essentially

chasing Ms. Pearson away from a table at which she had been sitting before he unexpectedly joined her, he sarcastically stated to a student nearby: "I don't think she likes me." *Id.* at ¶ 133.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

266. On December 18, 2015, one of Ms. Pearson's friends approached Ms. Pearson, clearly wanting to speak with her. *Id.* at ¶ 134.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

267. Ms. Pearson's friend told Ms. Pearson that the Male Student had cornered her after a class, and told her that he wanted to go on a double date with her, another male student, and Ms. Pearson. *Id.* at ¶ 135.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

268. Ms. Pearson had never heard of such plans at all. *Id.* at ¶ 136.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

269. Nonetheless, Ms. Pearson's friend said the Male Student told her to bring Ms. Pearson with her and the other male student to go "bowling." *Id.* at ¶ 137.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

270. Ms. Pearson's friend replied that she was not interested, and that Ms. Pearson most likely *certainly* would not be interested. *Id.* at ¶ 138.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

271. According to Ms. Pearson's friend, the Male Student responded, in a clearly suggestive manner "I know what she wants." *Id.* at ¶ 139.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

272. As Ms. Pearson's friend further stated, the manner in which the Male Student made such comment was threatening enough that she felt compelled to tell Ms. Pearson immediately. *Id.* at ¶ 140.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

273. Thereafter, Ms. Pearson and her friend, out of fear, coordinated their leaving campus together following their final exam for their mutual protection from the Male Student. *Id.* at ¶ 141.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

274. Notably, during Ms. Pearson's final shift in the library for the semester, the Male Student once again showed up, spending a significant amount of his time glaring at Ms. Pearson – despite their being no classes left, and nothing relevant for him to do in the library. *Id.* at ¶ 142.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

*The Male Student's Harassment of Ms. Pearson Continues into the Second Trimester*

275. When the next trimester resumed in January 2016, Ms. Pearson attended Logan's "Club Day" with a friend. *Id.* at ¶ 143.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 50.**

276. At Club Day, in which approximately one hundred students were in attendance, the Male Student chose to stand in such a close proximity to Ms. Pearson that Ms. Pearson was unable even to communicate her distress to her friend; despite moving her location multiple times to get away from the Male Student, who moved with Ms. Pearson to "hover" near her. *Id.* at ¶ 144.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

277. Every time that Ms. Pearson was able to catch a glimpse of him, the Male Student was staring at her in a manner so threatening that it indicated to Ms. Pearson that the Male Student wanted to hurt her; ultimately, Ms. Pearson left the event because the Male Student's behavior made her so uncomfortable. *Id.* at ¶ 145.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

278. In another instance occurring closely in time thereafter, in January 2016, Ms. Pearson was in the library having her hip bone measured by a friend from her Kinesiology class while the Male Student, also in the library at the time, walked past the pair. *Id.* at ¶ 146.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

279. As he was walking, upon noticing that Ms. Pearson's friend had to touch Ms. Pearson's upper thigh in order to measure her hip region, the Male Student stopped and stood by the pair in order to watch Ms. Pearson intently, making Ms. Pearson so uncomfortable that Ms. Pearson asked her friend to stop until the Male Student finally left the area. *Id.* at ¶

147.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

280.  In addition to these specific events occurring within just the first week of classes, the Male Student's stalking behavior of nearly always being in the library when Ms. Pearson had her work shifts continued unremittingly. *Id.* at ¶ 148.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

*Ms. Pearson's Continuing Appeals to Logan for Assistance*

281. Finally,  on  January  15th,  2016,  having  heard  nothing  from  the  Logan administration regarding the matter, Ms. Pearson e-mailed Sawalich, expressing that she still felt unsafe on campus and asking for an update on the actions Sawalich would take. *Id.* at ¶ 149.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 49.**

282.  To  Ms.  Pearson's  great  surprise,  Sawalich  replied  that  she  already  had  met  with the  Male  Student  *on  two  occasions*  –  apparently  without  ever  informing  Ms.  Pearson,  who specifically had  requested,  out  of  fear  of  retaliation,  that  she  at  least  be  informed  when  the Male Student was to be interviewed. *Id.* at ¶ 150.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 51.**

283.  When Ms. Pearson subsequently met in person with Sawalich on January 19, 2016, it became even more shocking to Ms. Pearson that she had not been informed by Sawalich either before or after Sawalich's *two* meetings with the Male Student, when Sawalich stated that she had to meet with the Male Student twice because he was "just really angry at the first one."  *Id.* at ¶ 151.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*"). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

284.  Sawalich further stated that, during their meeting, the Male Student told Sawalich that he "knew" who had reported him. *Id.* at ¶ 152.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment.**

See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact*. . . ."). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

285.  Learning from Sawalich that the Male Student himself stated that he "knew" who had reported him obviously scared Ms. Pearson, who asked Sawalich what Logan would do in order to protect Ms. Pearson from the Male Student's potentially retaliating against her. *Id.* at ¶ 153.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

286.  Sawalich's answer to Ms. Pearson was that she personally told the Male Student, during the first meeting – the meeting that Sawalich openly stated had not gone well because the Male Student was "really angry" – to stay away from whoever the Male Student believed had reported him. *Id.* at ¶ 154.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 44 and 48.**

287.  Sawalich told Ms. Pearson that the Male Student admitted during the meeting that he could understand how some of his actions may be considered harassment or stalking. *Id.* at ¶ 155.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*"). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

*Logan Informs Ms. Pearson That It Will Take No Further Action After Effectively Not Investigating the Matter At All*

288.  Ms. Pearson then asked Sawalich if she had interviewed any of her witnesses. *Id.* at ¶ 156.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 55-56.**

289.  Sawalich responded that she had not. *Id.* at ¶ 157.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 55-56.**

290.  Sawalich told Ms. Pearson that, as of the date of that meeting, January 19, 2016, the *only* "investigative" steps Sawalich had taken was to interview the Male Student and reveal to him that Ms. Pearson had complained of his behavior. *Id.* at ¶ 158.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 55-56.**

291.  Sawalich stated that, in her opinion, because Ms. Pearson chose to stay anonymous, it would be too difficult to interview witnesses under those circumstances, as they inevitably would be able to determine who she was, potentially compromising Sawalich's ability to keep Ms. Pearson anonymous. *Id.* at ¶ 159.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 55-56.**

292.  Ms. Pearson stated that she strongly disagreed with Sawalich's assessment in every respect. *Id.* at ¶ 160.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th**

**Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact*. . . .").**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

293. Ms. Pearson stated that, if others also saw the Male Student's encounters with Ms. Pearson as harassment, they would identify it as the same, without any need for them or Sawalich to even have to mention Ms. Pearson's name in any official statements. *Id.* at ¶ 161.

**RESPONSE: See objection to Paragraph 292.**

294. Sawalich disagreed, stating that she could not feasibly interview Ms. Pearson's witnesses without compromising Ms. Pearson's confidentiality – although Sawalich already twice had interviewed the Male Student, who was (as Sawalich kept undisclosed from Ms. Pearson) actively *searching for* Ms. Pearson's identity during both meetings, and had admitted to Sawalich that he knew it was Ms. Pearson who reported him. *Id.* at ¶ 162.

**RESPONSE: See objection to Paragraph 292.**

295. This also was in spite of Sawalich, at her previous meeting with Ms. Pearson, stating that questioning witnesses while protecting Ms. Pearson's confidentiality *was* feasible. *Id.* at ¶ 163.

**RESPONSE: See objection to Paragraph 292.**

296. Ms. Pearson clearly remembers this fact as she even requested, and Sawalich complied, that Sawalich give to her an "example" question to illustrate how Sawalich would ask questions of witnesses and do so without revealing Ms. Pearson's identity. *Id.* at ¶

164.

**RESPONSE: See objection to Paragraph 292.**

297. Ms. Pearson and Sawalich, at that meeting, mutually agreed that Ms. Pearson's witnesses could be interviewed while keeping her identity confidential. *Id.* at ¶ 165.

**RESPONSE: See objection to Paragraph 292.**

298. Ms. Pearson was taken aback by Sawalich's refusal to interview witnesses unless Ms. Pearson would waive her right to confidentiality. *Id.* at ¶ 166.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

299. Practically pleading with Sawalich to at least talk to **one** of her witnesses, Ms. Pearson made it clear to Sawalich that she believed her witnesses would at least help Sawalich to more-objectively assess the situation. *Id.* at ¶ 167.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

300.  Sawalich was unmoved. *Id.* at ¶ 168.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

301. Ms. Pearson then asked Sawalich if the few steps Sawalich had taken were all that would be done after repeating that she still constantly felt afraid, and was now even *more* afraid because she had reported the Male Student, Logan had informed the Male Student that

she had reported him, and yet nothing at all had been done to protect her from the Male Student's potential retaliation. *Id.* at ¶ 169.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

302. Sawalich affirmed that what had been done (essentially nothing but further endanger Ms. Pearson) was all that would be done. *Id.* at ¶ 170.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

303. In fact, Ms. Pearson specifically recalls asking if she would simply have to "deal with" the situation – being stalked, glared at, and potentially even assaulted further by the Male Student, and in a much graver manner. *Id.* at ¶ 171.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

304. Unbelievably, Sawalich simply nodded her head affirmatively. *Id.* at ¶ 172.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

***The Male Student Continues to Stalk and Harass Ms. Pearson Through January and February 2016***

305. It was after this disappointing meeting with Sawalich, and coming to the

realization that she was now in even greater danger, that Ms. Pearson began even more-fervently looking at other schools (she already had begun a few months prior) understanding through all of her turmoil that her education could not be compromised any more through the distraction and constant fear of being attacked. *Id.* at ¶ 173.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

306. Yet the next week, January 27, 2016, while in the library, the Male Student approached Ms. Pearson while she was loading paper into a printer. *Id.* at ¶ 174.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record...reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

307. He then followed Ms. Pearson back to the table she had been sitting at attempting to engage her in conversation. *Id.* at ¶ 175.

**RESPONSE: See objection to Paragraph 306.**

308. Ms. Pearson ignored him and instead walked towards a female student in one of her classes and began to talk to that student, hoping the Male Student would go away. *Id.* at ¶ 176.

**RESPONSE: See objection to Paragraph 306.**

309. The Male Student nonetheless stood there for a few minutes, engaging in "small talk" by making several random comments towards Ms. Pearson and her classmate, both of whom simply tried to ignore the Male Student, hoping he would leave them alone. *Id.* at ¶ 177.

**RESPONSE: See objection to Paragraph 306.**

310. Throughout the entire "conversation," lasting a handful of minutes (and which was awkward in that, through most of it, the Male Student was more-or-less conversing with himself by simply exclaiming certain things about the semester and their classes), Ms. Pearson simply stared at a document and *pretended* to fill it out. *Id.* at ¶ 178.

**RESPONSE: See objection to Paragraph 306.**

311. She actually was nearly frozen in fear and in shock that the Male Student had approached her in the abrupt manner that he had, clearly having some sort of agenda and wanting to say something to her until she approached her classmate. *Id.* at ¶ 179.

**RESPONSE: See objection to Paragraph 306.**

312. Her classmate told Ms. Pearson that she could "tell [Ms. Pearson] was uncomfortable. *Id.* at ¶ 180.

**RESPONSE: See objection to Paragraph 306.**

313. She then told Ms. Pearson that she would "call the cops were she ever in a room alone with" the Male Student. *Id.* at ¶ 181.

**RESPONSE:  See objection to Paragraph 306.**

314. Her classmate also confided in Ms. Pearson that the Male Student had attempted to bring alcohol and invite himself over to her house, and would frequently try to walk her to her car at night despite her repeated objections. *Id.* at ¶ 182.

**RESPONSE:  See objection to Paragraph 306.**

315. Later, while in the computer lab, Ms. Pearson mentioned to her supervisor, Ms. Ellen Dickman, that she was looking to transfer schools. *Id.* at ¶ 183.

**RESPONSE:  See objection to Paragraph 306.**

316. Ms. Dickman exclaimed that she did not want to lose Ms. Pearson, as Ms. Pearson was "her best lab assistant." *Id.* at ¶ 184.

**RESPONSE:  See objection to Paragraph 306.**

317. Pointedly, throughout her turmoil, Ms. Pearson, formerly a straight-A high-school student and her high-school class valedictorian, was able to maintain nearly a straight-A grade point average while at Logan. *Id.* at ¶ 185.

318. That very same day, Wednesday, January 27, 2016, Ms. Pearson received an e-mail from one Stacey Till, Logan's Assistant Vice President of Student Development, stating that she had been contacted by Ms. Dickman, was aware of what a great student Ms. Pearson was, and was concerned as to why she would want to transfer. *Id.* at ¶ 186.

**RESPONSE:  See objection to Paragraph 306.**

319. Till suggested that Ms. Pearson meet with her on January 29, 2016; Ms. Pearson agreed that the date and time would work. *Id.* at ¶ 187.

**RESPONSE:  See objection to Paragraph 306.**

320.  On January 29, 2016, Ms. Pearson met with Till in Till's office. *Id.* at ¶ 188.

**RESPONSE:  See objection to Paragraph 306.**

321.  During that meeting, Ms. Till told Ms. Pearson that Logan did not want to lose "a student like [her]." *Id.* at ¶ 189.

**RESPONSE:  See objection to Paragraph 306.**

322.  Ms. Pearson responded that Logan should just let her go; Ms. Pearson shared that ever since she had been a little girl and her grandparents had driven her past Logan, she had wanted to attend school there. *Id.* at ¶ 190.

**RESPONSE:  See objection to Paragraph 306.**

323.  However, Ms. Pearson continued, it was her opinion that Logan's administration and students were unprofessional, and then relayed the circumstances involving the Male Student, Sawalich's essentially blowing her off, Logan's failure to do anything to address the situation and the fact she now was in almost constant fear of being sexually assaulted while on campus. *Id.* at ¶ 191.

**RESPONSE:  See objection to Paragraph 306.**

324.  Till specifically told Ms. Pearson in response to her recounting the circumstances that Sawalich's actions were "not okay." *Id.* at ¶ 192.

**RESPONSE:  See objection to Paragraph 306.**

325.  In order for Ms. Pearson to have her situation handled properly, Till suggested, she would set up a meeting between Ms. Pearson and Dr. Boyd Bradshaw, Logan's Assistant Vice President of Enrollment Management. *Id.* at ¶ 193.

**RESPONSE:  See objection to Paragraph 306.**

326.  Ms. Pearson, through Bradshaw's assistant, set up a meeting for the following

Monday, February 1, 2016. *Id.* at ¶ 194.

**RESPONSE:  See objection to Paragraph 306.**

327. That Monday, prior to the meeting, Ms. Pearson was with her Human Biology teacher, Laurie Hart, who began to inquire about the circumstances with the Male Student. *Id.* at ¶ 195.

**RESPONSE:  See objection to Paragraph 306.**

328. Ms. Pearson recounted that the Male Student's behavior had only gotten worse, and that she was in constant fear, but that Logan, particularly Sawalich, had taken no steps to protect her at all. *Id.* at ¶ 196.

**RESPONSE:  See objection to Paragraph 306.**

***The Logan Administration Re-commenced the Investigation Only After Ms. Pearson Had Informed Them She Would Transfer From The School Due To Logan's Inaction***

329. Later, at the February 1, 2016 meeting with Bradshaw, held in Bradshaw's office, Bradshaw reacted with shock, exclaiming "she said that?" and expressing disdain in response to details of Ms. Pearson's account of Sawalich's mishandling of the situation. *Id.* at ¶ 197.

**RESPONSE:  See objection to Paragraph 306.**

330. Surprisingly to Ms. Pearson, after she informed Bradshaw that Sawalich was not taking the matter seriously and had completely neglected her duties, Bradshaw told Ms. Pearson that "[he] was going to ask for [Ms. Pearson] to trust Shelly [Sawalich]" and told Ms. Pearson (to her dismay) that he would be placing the matter back into Sawalich's hands. *Id.* at ¶ 198.

**RESPONSE:  See objection to Paragraph 306.**

331. Bradshaw then suggested a follow-up meeting, attended by Sawalich as well, to be held on February 3, 2016. *Id.* at ¶ 199.

**RESPONSE:  See objection to Paragraph 306.**

332. On February 3, 2016, Ms. Pearson, Sawalich, and Bradshaw met together in Bradshaw's office for their scheduled meeting. *Id.* at ¶ 200.

**RESPONSE:  See objection to Paragraph 306.**

333. Sawalich was several minutes late. *Id.* at ¶ 201.

**RESPONSE:  See objection to Paragraph 306.**

334. At the meeting, Bradshaw stated that he had received an e-mail regarding the situation, written by Hart and forwarded to him from Dean Cole. *Id.* at ¶ 202.

**RESPONSE:  See objection to Paragraph 306.**

335. According to Bradshaw, he then forwarded this e-mail to Sawalich. *Id.* at ¶ 203.

**RESPONSE:  See objection to Paragraph 306.**

336. Then, both Bradshaw and Sawalich assured Ms. Pearson that action *would be* taken. *Id.* at ¶ 204.

**RESPONSE:  See objection to Paragraph 306.**

337. In a half-apology, Sawalich stated: "I'm sorry you felt unsafe during my investigation and that I didn't e-mail you before meeting with [the Male Student].  However, he always showed up early for the meetings."  *Id.* at ¶ 205.

**RESPONSE:  See objection to Paragraph 306.**

338. She also again attributed her failure to interview Plaintiff's witnesses to purportedly being unable to do so while keeping Ms. Pearson's identity confidential. *Id.* at ¶

206.

    **RESPONSE:  See objection to Paragraph 306.**

    339. Bradshaw did not seem to be struck by the fact that Sawalich had terminated her "investigation" after only interviewing *the Male Student* twice and refusing to speak to a single witness whose name Ms. Pearson had provided. *Id.* at ¶ 207.

    **RESPONSE:  See objection to Paragraph 306.**

    340.  He asked Sawalich to provide a general timeline for her investigation. *Id.* at ¶ 208.

    **RESPONSE:  See objection to Paragraph 306.**

    341. Sawalich expressed that she had no timeline in mind, as she had considered the investigation closed. *Id.* at ¶ 209.

    **RESPONSE:  See objection to Paragraph 306.**

    342. Sawalich also stated that she did not feel that it was "necessary" to warn campus security of the situation, and had not previously done so. *Id.* at ¶ 210.

    **RESPONSE:  See objection to Paragraph 306.**

    343. Finally, partly in response to Bradshaw's urging, Sawalich agreed to have the Male Student kept out of the library (although she did not appear to ever have actually followed through on that oral promise), but openly acted as though she were doing Ms. Pearson a tremendous favor in taking that measure. *Id.* at ¶ 211.

    **RESPONSE:  Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

    *Sawalich's Begrudging "Investigation" of Ms. Pearson's Circumstances*

    344. Based on Ms. Pearson's discussion with her witnesses, Dean Sawalich she must

have interviewed all of them in rapid fashion, as she interviewed eight separate witnesses between February 3, 2016 (the day of the meeting) and February 5, 2016. *Id.* at ¶ 212.

**RESPONSE:  Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

345. To Ms. Pearson's ever-increasing dismay, as the interviews were being conducted, Ms. Pearson's witnesses (many female and themselves bothered by the fact) consistently reported back to Ms. Pearson that they got the sense Sawalich was not taking the investigation seriously at all. *Id.* at ¶ 213.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

346. Two witnesses specifically insisted to Ms. Pearson that Ms. Pearson was "screwed" in light of Sawalich's demeanor; one said that Sawalich tried to "flip" her testimony around; another that Sawalich only wrote down facts detrimental to Ms. Pearson; and yet another told Ms. Pearson that Sawalich told each student upfront that their report would have to be shared with the Male Student, something many said gave them pause to even testify in the first place, fearing retaliation from their much older classmate. *Id.* at ¶ 214.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

347. Notably, none of the witnesses Ms. Pearson talked to said that they were shown Sawalich's respective notes on the conversations they had with Sawalich to verify

the same for accuracy, and no tape recorders were ever used by Sawalich during those interviews. *Id.* at ¶ 215.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

348.  Later, after Ms. Pearson had obtained copies of the witness statements, several of the witnesses reported to Ms. Pearson after viewing copies of the same, that Sawalich's written accounts of their respective conversations were highly inaccurate and in some respects blatantly false. *Id.* at ¶ 216.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

*Ms. Pearson Reports the Male Student's Retaliation, Yet the Male Student Continued to Stalk Ms. Pearson*

349.  On, February 5, 2016, Sawalich e-mailed Ms. Pearson, informing her that she had interviewed her witnesses and planned to interview the Male Student, *but said nothing about the fact the Male Student already knew that Ms. Pearson had reported him. Id.* at ¶ 217.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 84.**

350.  Pointedly, Ms. Pearson responded to this e-mail by informing Sawalich (and Bradshaw) to be on guard as to what the Male Student may tell her, as she had heard that the

Male Student had begun spreading rumors about her that she was overdramatic in everything she did and that she had similarly accused a student at a prior school of harassment, which was completely false. *Id.* at ¶ 218.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Logan's Statement of Uncontroverted Material Facts No. 85.**

351. Ms. Pearson specifically informed Sawalich and Bradshaw that she saw this behavior as clear retaliation for her having reported the Male Student. *Id.* at ¶ 219.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 84.**

352. Sawalich responded by thanking Ms. Pearson for her e-mail and stating that she was meeting with the Male Student the next day and "certainly would address [his spreading of rumors]." *Id.* at ¶ 220.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 89.**

353.  For the next two weeks, Ms. Pearson would see the Male Student outside of her classroom, and sporadically on campus, "happening" to run into Ms. Pearson multiple times, although he stayed out of the library. *Id.* at ¶ 221.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

354. Indeed, the Male Student's stalking of Ms. Pearson was as active and prevalent

as ever, the only exception  being that he would not follow her into the library. *Id.* at ¶ 222.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

355. Ms. Pearson continued to live in fear whenever on-campus, and spent her free time looking to other schools to which she could transfer. *Id.* at ¶ 223.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

356. Other than not seeing the Male Student while in the library, the Male Student continued to stalk her everywhere else on campus, just as blatantly and aggressively as before. *Id.* at ¶ 224.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

357. On February 20, 2016, Ms. Pearson e-mailed Sawalich, requesting an update on the investigation. *Id.* at ¶ 225.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

358. Sawalich told Ms. Pearson that she was still investigating the matter, but requested to meet with Ms. Pearson on February 24, 2016, just before lunchtime. *Id.* at ¶ 226.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

359.  That meeting had to be cancelled due to the weather. *Id.* at ¶ 227.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

*Sawalich Meets With Ms. Pearson on February 26, 1016 and Reveals She Did Not Even Know Basic Facts Relating to What Ms. Pearson Had Reported*

360. Later, Sawalich e-mailed Ms. Pearson and asked to reschedule their meeting for the coming Friday, February 26, 2016. *Id.* at ¶ 228.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 98.**

361.  Ms. Pearson agreed and was able to meet with Sawalich on that date. *Id.* at ¶ 229.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 98.**

362. During that meeting, Sawalich updated Ms. Pearson on the progress of her "investigation" to that point, and then told Ms. Pearson that she wanted to be sure that she had Ms. Pearson's story "straight," so asked her to retell the same again. *Id.* at ¶ 230.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 98.**

363. Ms. Pearson was highly distraught to hear that Sawalich was unsure as to the details of her story, as it meant that Sawalich inevitably had been recounting the same inaccurately to every witness to which she previously had spoken all of them. *Id.* at ¶ 231.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

364. In any event, Ms. Pearson told Sawalich the entire story again, which Sawalich abruptly interrupted a few minutes into in order to tell Ms. Pearson that her "hand was tired," from taking notes. *Id.* at ¶ 232.

**RESPONSE:  See objection to Paragraph 363.**

365. Sawalich then walked towards a table in her office, and with a tape recorder from in her hand, which Sawalich placed on the table, turning it to "record." *Id.* at ¶ 233.

**RESPONSE:  See objection to Paragraph 363.**

366. Sawalich then asked Ms. Pearson very pointedly whether she had ever generally told the Male Student "no," or specifically state that his "conduct was unwelcome." *Id.* at ¶ 234.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this**

objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 101.

367. Ms. Pearson said she could not remember the specific words she used, but that she *had* on countless occasions told the Male Student not to talk to her, and would ignore and avoid him as best as she was able. *Id.* at ¶ 235.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 101.**

368. Ms. Pearson got a strong sense that Sawalich was attempting to put words into Ms. Pearson's mouth as Sawalich again asked if Ms. Pearson ever had said a specific permutation of "stay away." *Id.* at ¶ 236.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 101.**

369. Ms. Pearson, sensing that Sawalich was attempting to put words into her mouth, stated directly that Ms. Pearson was not certain if she stated some "magic words" Sawalich seemed to be searching for, but that Ms. Pearson told the Male Student on *multiple* occasions to "stay away," "leave [her] alone," and/or otherwise completely ignored the Male Student when he would speak to her. *Id.* at ¶ 237.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 101.**

370. Ms. Pearson made it clear that the Male Student unquestionably had been told that his behavior was entirely unwelcome by her directly, verbally, and in almost countless other,

non-verbal, yet equally obvious manners. *Id.* at ¶ 238.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 101.**

371. Regarding what Sawalich seemed to treat as the "magic words," Ms. Pearson admitted that she did not say directly, verbatim, to the Male Student: "Your behavior is prohibited sexual harassment that is unwelcome." *Id.* at ¶ 239.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 101.**

372. Ms. Pearson, at that same meeting on February 26, 2016, also reported what she considered yet an additional instance of retaliation: apparently the Male Student had flunked a test and was now telling others that it was Ms. Pearson's fault for placing him under stress due to her accusations. *Id.* at ¶ 240.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

373.   Sawalich listened to all of this information with little comment. *Id.* at ¶ 241.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th**

**Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").***

> **Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

374. Instead of addressing the retaliation report, Sawalich instead belabored the point – again asking Ms. Pearson whether she had made certain specific statements such as "your behavior is unwelcome" or "you are harassing me." *Id.* at ¶ 242.

> **RESPONSE: See objection to Paragraph 373.**

375. After Ms. Pearson repeated yet again that she could not recall the precise words she used, but told the Male Student to leave her alone numerous times, Sawalich asked her to provide any more evidence that she had, but to otherwise expect a report within the next week or so. *Id.* at ¶ 243.

> **RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 101.**

> *Sawalich Issues Her One-Sided, Inaccurate "Official Report"*

376. Finally, Sawalich issued her Official Report on the circumstances and her "investigation" thereof, sending it to Ms. Pearson the first week of March 2016. *Id.* at ¶ 244.

> **RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 104.**

377. Amazingly, in light of the fact that she met with Ms. Pearson on February 26, 2016, at that time telling Ms. Pearson that she needed to get Ms. Pearson's story "straight," Sawalich apparently *had already completed* her Official Report, according to the fact it is dated February 22, 2016, days before Sawalich even requested to meet with Ms. Pearson. *Id.* at ¶ 245.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

378. Reviewing the Official Report, Ms. Pearson found it deficient in numerous respect, the Official Report barely covers *any* facts, overlooks witness interview statements that Sawalich herself documented that are much more incriminating (as illustrated above, for instance) than Sawalich's vague, watered-down and highly inaccurate reporting conveys, presents facts in one-sided fashion, and contains almost none of the detailed history that Ms. Pearson – the victim and the person most intimately familiar with the facts – relayed to Sawalich, Till, and Bradshaw. *Id.* at ¶ 246.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

379. Pointedly, the Report did not even mention the fact Ms. Pearson had been physically and sexually assaulted – the worst conduct Ms. Pearson had reported.  *Id.* at ¶ 247.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

380. In short, the Official Report was dishonest, slanted, and woefully inadequate according to all of the facts Ms. Pearson knew and had reported. *Id.* at ¶ 248.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

381. Sawalich did not recommend that any protection be afforded Ms. Pearson and emphasized that the text messages that merely *began* the six-months-worth of harassment had not been found. *Id.* at ¶ 249.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

382. However, even that statement was untrue. *Id.* at ¶ 250.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

383. When Sawalich wrote the assertion that "the text messages between the two are not accessible," those text messages had not yet, in reality, been determined available or unavailable, as Ms. Pearson was still trying to retrieve the same. *Id.* at ¶ 251.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

384. As late as *February 28, 2016* – approximately a week after Sawalich already had completed her report – Sawalich e-mailed Ms. Pearson asking her whether she was able

to obtain those texts.  *Id.* at ¶ 252.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

385. On Ms. Pearson's end, Sawalich had her conducting a largely meaningless search while completely ignorant (because Sawalich did not simply tell her) that Sawalich already had completed her Official Report. *Id.* at ¶ 253.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

386. Despite completing the Official Report on February 22, 2016, Sawalich did not deliver it to Ms. Pearson until March 3, 2016 at 5:36p.m. *Id.* at ¶ 254.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

387. Along with the Official Report, Sawalich attached witness interviews for approximately a dozen different witnesses. *Id.* at ¶ 255.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 104.**

388. The Official Report and witness statements were riddled with so many errors and discrepancies that Ms. Pearson hardly knew where to start in responding to the same. *Id.* at ¶ 256.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

389. From the time Ms. Pearson first reported the months of harassment, stalking and sexual assault to Logan's administration, on or before December 9, 2015, until she finally received Sawalich's Official Report, the evening of Thursday, March 3, 2016, a total of 86 days had elapsed. *Id.* at ¶ 257.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

390. Yet Ms. Pearson was allowed just **one** business day, **three** calendar days total, in order to write her response to the Official Report. *Id.* at ¶ 258.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

391. Horrified at the ineptitude of the investigation, the extreme amount of

inaccuracies and contradictions in the Official Report and witness statements, and the realization that she did not have enough time to even inquire of the witnesses if the statements were accurate– many, including that of co-Plaintiff Kirsten Kirkpatrick, as set forth below, were not – Ms. Pearson nonetheless had to maintain her composure throughout the next day, Friday, March 4, 2016, until the following Monday, March 7, 2016 at 8 a.m., in order to respond to the Official Report in the most thorough manner that she was able. *Id.* at ¶ 259.

>**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

392. The next day, on March 4, 2016, Ms. Pearson received an e-mail from Sawalich regarding the hearing. *Id.* at ¶ 260.

>**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

393. Amongst other information regarding the hearing, that e-mail stated: At the hearing you will have an opportunity to confront *the allegations made against you*, to present your perspective of the incident, and to question evidence presented at the hearing. Please review [Logan's Catalog (Exhibit C)] for a more complete description of the hearing, your rights, and *the disciplinary actions that may be initiated against you*." *Id.* at ¶ 261.

>**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

394. Upon reading this, Ms. Pearson could not believe that there apparently would be "allegations made *against*[her]," and/or that "disciplinary actions [] may be initiated

*against*[her]." *Id.* at ¶ 262.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

395.  Ms. Pearson found these statements threatening and intimidating, but did not immediately address the same, instead focusing on preparing her response to the erroneous Official Report. *Id.* at ¶ 263.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

396.  On March 6, 2017, Ms. Pearson e-mailed her completed response, pointing out *numerous* errors, discrepancies, and short-comings in the Official Report. *Id.* at ¶ 264.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 115.**

*Ms. Pearson's Meeting with Boyd Bradshaw*

397.  Later the next day, March 7, 2016, Ms. Pearson went to Bradshaw's office and requested a meeting with him. *Id.* at ¶ 265.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties**

disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*"). Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

398. Bradshaw was able to find time to speak with Ms. Pearson, not before making her wait for so long that she ended up missing a good portion of her following class. *Id.* at ¶ 266.

**RESPONSE:  See objection to Paragraph 397.**

399. During that meeting, Ms. Pearson voiced numerous concerns with the Official Report, Sawalich's general mishandling of the matter, the short deadline Ms. Pearson was given to respond to the Report, and the entire investigation process in general. *Id.* at ¶ 267.

**RESPONSE:  See objection to Paragraph 397.**

400. Bradshaw generally downplayed Ms. Pearson's concerns, and even made statements seemingly meant to blame Ms. Pearson for what had happened, and told Ms. Pearson that he would talk to Sawalich and bring Ms. Pearson's concerns to Logan's "University Honor Council" (the "Council"). *Id.* at ¶ 268.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

401. Bradshaw stated that the largely mysterious Council was "fair" and that Bradshaw would talk with its members personally, and that he "could not imagine" Ms. Pearson not getting what she wanted. *Id.* at ¶ 269.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

402. He was sure to add, however, that if Ms. Pearson did not immediately get the relief she felt she needed, that there was an "appeals" process that Ms. Pearson could follow. *Id.* at ¶ 270.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

403. In a follow-up e-mail the same day, Bradshaw told Ms. Pearson that he (apparently shortly after his meeting with Ms. Pearson) had met with "Shelly" (Sawalich) and let her know the concerns Ms. Pearson had raised – her concerns about Sawalich's mishandling of her matter. *Id.* at ¶ 271.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

404. Ms. Pearson did not request that Bradshaw contact Sawalich. *Id.* at ¶ 272.

**RESPONSE:    See objection to Paragraph 403.**

405. In fact, Ms. Pearson found Bradshaw's approach somewhat intimidating and inappropriate in light of the fact that she had gone to Bradshaw to complain in confidence about Sawalich's mishandling of the investigation, obviously not to request that she be given *additional* responsibility over the investigation. *Id.* at ¶ 273.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

406. Ms. Pearson found inadequate Bradshaw's decision to simply return the matter to Sawalich after Ms. Pearson had just complained about Sawalich's mishandling of the investigation. *Id.* at ¶ 274.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

407. Ms. Pearson responded to Bradshaw's e-mail promptly, telling him again some of the specific reasons that she felt Sawalich's investigation had been inadequate and left glaring questions unanswered. *Id.* at ¶ 275.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that**

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact….*").

Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

408. Ms. Pearson also attached the March 4, 2016 e-mail from Sawalich containing what she saw as a veiled threat, telling Bradshaw that she "wish[ed] [she]had more information about the honor council but [she] was really upset when Dean Sawalich sent [her] an email implying that [she] may be punished for being the victim of harassment. (Please see below)." *Id.* at ¶ 276.

**RESPONSE: See objection to Paragraph 407.**

409. Shockingly, Bradshaw's response to Ms. Pearson's e-mail did not provide any further information regarding the Council, and did not even address Sawalich's threatening e-mail of March 4, 2016. *Id.* at ¶ 277.

**RESPONSE: See objection to Paragraph 257.**

410. Instead, Bradshaw informed Ms. Pearson that he "just got off the phone with … Sawalich and asked her to get in touch with [Ms. Pearson] about [Ms. Pearson's] questions." *Id.* at ¶ 278.

**RESPONSE: See objection to Paragraph 257.**

411. Bradshaw then concluded his relatively curt e-mail by telling Ms. Pearson that

Sawalich would contact her directly regarding Ms. Pearson's complaints to Bradshaw about Sawalich's investigation and Sawalich's threatening e-mail. *Id.* at ¶ 279.

**RESPONSE: See objection to Paragraph 257.**

*Ms. Pearson's Meeting with the "Student Honor Council"*

412. The next day, on March 8, 2016, Ms. Pearson attend her scheduled hearing with the University Honor Council. *Id.* at ¶ 280.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 121.**

413. Ms. Pearson' mother accompanied Ms. Pearson to the hearing. *Id.* at ¶ 281.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 121.**

414. Ms. Pearson immediately noticed that none of the five members on the Student Honor Council were students. *Id.* at ¶ 282.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal**

context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact*. . . .").

Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.

415. Ms. Pearson generally did not recognize the other members, but somewhat knew of Professor "Spilka."  *Id.* at ¶ 283.

**RESPONSE: See objection to Paragraph 414.**

416. Ms. Pearson did not know any Council members personally.  *Id.* at ¶ 284.

**RESPONSE: See objection to Paragraph 414.**

417. Following the Honor Council meeting, Robert Kuhn made a derogatory comment about how women "cannot walk" in high heels.  *Id.* at ¶ 285.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

418. Indeed, many female students at Logan wear high-heeled shoes to classes.  *Id.* at ¶ 286.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

419. Ms. Pearson was asked by the Council to tell her "story" as to what had happened.  *Id.* at ¶ 287.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. Subject to this**

**objection, admit. See Logan's Statement of Uncontroverted Material Facts No. 122.**

420. After listening to Ms. Pearson, at first, the Council offered Ms. Pearson another work-study position outside of the library.  *Id.* at ¶ 288.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

421. Ms. Pearson responded that doing so would be unfair, as she should not have to change her work position due to the actions of the Male Student.  *Id.* at ¶ 289.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

422. Ms. Pearson requested that, if the Male Student needed library access, he at least could be precluded from entering the specific area of the library where Ms. Pearson had to work.  *Id.* at ¶ 290.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

423. In response to what seemed an inordinate focus on her age, by Sawalich in her Official Report, as well as by the Council, as its members indicated through their questioning, Ms. Pearson felt the need to point out that her age and sex had nothing to do with the case.  *Id.* at ¶ 291.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

424. The Council – every member of which was clearly much older than Ms. Pearson – disagreed.  *Id.* at ¶ 292.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

425. In fact, an older male Council member, Dr. Robert Kuhn stated: "[you] don't know how you would feel [in regards to the Male Student's conduct] when you are thirty; you might even laugh." *Id.* at ¶ 293.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

426. Ms. Pearson vehemently disagreed. *Id.* at ¶ 294.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

427. Ms. Pearson also brought and presented the Council with her Response to Sawalich's Official Report. *Id.* at ¶ 295.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 119.**

428. Despite Sawalich asserting the day before that she would provide the Council with Ms. Pearson's Response, the Council members indicated that they must have cursorily reviewed, if they reviewed at all, her Response; one female Council member even directly stated that she "had not seen it" in response to Ms. Pearson's reference to an e-mail pasted on the very first page of that Response. *Id.* at ¶ 296.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

429. Nonetheless, various Council members told Ms. Pearson – at least three times – that there would be "no problem keeping [the Male Student] away from [her]" and similar permutations of that statement. *Id.* at ¶ 297.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

430. At no time did the Honor Council express any procedure and/or method for determining whether Ms. Pearson's complaints were founded. *Id.* at ¶ 298.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

*The Honor Council Issues Its Decision*

431. On March 11, 2016, Sawalich sent out an e-mail containing the Council's decision. *Id.* at ¶ 299.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 126-127.**

432. In that e-mail, Sawalich reported that the Council found the Male Student "not responsible" for either harassment or stalking. *Id.* at ¶ 300.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 126-127.**

433. Moreover, the Council recommended very little in the way of limiting contact between the Stalker and Ms. Pearson, concluding: There is to be no personal contact between you two. Neither of you may contact or attempt to contact the other. Due to the decision, there are no limitations to utilization of common space or campus resources.  In clarity, you both may use Logan's facilities without limitations (I.e., LRC/Library, hallways, cafeteria, classrooms, etc.) but are prohibited from any personal social contact (i.e., calling, texting, etc.). In social settings, such as Logan sponsored events you should ignore each other. *Id.* at ¶ 301.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

434. In short, the Council recommended that there be "no personal social contact," and that the two "ignore each other."  *Id.* at ¶ 302.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 126-127.**

435. Notably, however, the decision allowed the Male Student to "use Logan's facilities without limitations …"  *Id.* at ¶ 303.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 126-127.**

436. In other words, the Council took no action at all to prevent the Male Student's stalking behavior and/or to protect Ms. Pearson.  *Id.* at ¶ 304.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

437. Upon reviewing the decision, Ms. Pearson promptly e-mailed Bradshaw expressing both her disappointment with Logan, and her wish to meet with Bradshaw again. *Id.* at ¶ 305.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

438. Ms. Pearson also e-mailed Logan's Vice President of Academic Affairs, Kimberly O'Reilly, on March 14, 2016, requesting that O'Reilly also meet with her and Bradshaw the following Monday. *Id.* at ¶ 306.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 130.**

439. Ms. Pearson stated that she was tired of the futility of Logan's process for this situation, and that – due to this futility – she was not sure if she wanted to continue with the process at all.  *Id.* at ¶ 307.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

440. Ms. Pearson also voiced her frustration at Logan's putting Ms. Pearson through great distress by promising action, yet only delivering inaction – ultimately instituting no safeguards on Ms. Pearson's behalf whatsoever, and actually endangering her further. *Id.* at ¶ 308.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

441. Ms. Pearson also was upset in that she wanted to leave Logan after her first trimester, but was convinced to stay by Logan's administration (specifically Till's reaching out to Ms. Pearson) on the implied promise that her issue with the Male Student would be rectified. *Id.* at ¶ 309.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

442. O'Reilly's response to this was to offer to pay for Ms. Pearson's transcripts – presumably so that Ms. Pearson could apply to different schools – despite Ms. Pearson not yet having mentioned she was planning on transferring. *Id.* at ¶ 310.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

443. O'Reilly never paid for Ms. Pearson's transcripts. *Id.* at ¶ 311.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

444. In short, in response to Ms. Pearson's frustration with Logan's failure to protect her from the Male Student, O'Reilly (albeit subtly) essentially told Ms. Pearson that she should leave Logan. *Id.* at ¶ 312.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

445. To this, Ms. Pearson, now extremely frustrated, responded by saying that O'Reilly and Logan's administration were not above the law; and suggested that she now would have to contact authorities outside of Logan, and get a restraining order against the Male Student. *Id.* at ¶ 313.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

446. O'Reilly responded to this with an exceedingly obvious observation, stating something to the effect of "a restraining order and an appeal are two different things." *Id.* at ¶ 314.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

447. O'Reilly then suggested that Ms. Pearson seek counseling because Ms.

Pearson's feelings of fear would not "go away overnight" and "[Ms. Pearson's] fears were [her] fears, [so] maybe [she] needed counseling." *Id.* at ¶ 315.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

448. At this point, exasperated, Ms. Pearson requested an appeal, and asked O'Reilly how long an investigation and finalization of an appeal would take. *Id.* at ¶ 316.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

449. O'Reilly explained that the investigation would take approximately a week. *Id.* at ¶ 317.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 131.**

*Ms. Pearson Requests an Appeal*

450. The very next day, March 15, 2016, Ms. Pearson stopped by O'Reilly's office to provide her with additional documents and other correspondence supporting Ms. Pearson's appeal. *Id.* at ¶ 318.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 132.**

451. After being away from campus for a week for Logan's "Spring Break" period, Ms. Pearson e-mailed O'Reilly on March 20, 2016. *Id.* at ¶ 319.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 133.**

452. In that e-mail, Ms. Pearson informed O'Reilly that Ms. Pearson was fearful of returning to Logan's campus, as she was scared of the Male Student, and Logan's administration apparently would do nothing to attempt to curtail the Male Student's behavior or help to ensure her safety.  *Id.* at ¶ 320.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 133.**

453. O'Reilly responded by telling Ms. Pearson about her different "safety options" on campus (such as campus security officers) and by offering to move Ms. Pearson from her work-study position in the library.  *Id.* at ¶ 321.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 134.**

454. Regarding Ms. Pearson's appeal, despite telling Ms. Pearson a week prior that she would have completed her investigation and have a response "within a week," O'Reilly admitted that she had not even started reviewing the appeal or any of the evidence Ms. Pearson had provided the prior week.  *Id.* at ¶ 322.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

455. Later that week, when Ms. Pearson was alone in the library, she had a panic

attack due to feeling unsafe.  *Id.* at ¶ 323.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

456.  Ms. Pearson went to O'Reilly's office, asking to meet with her urgently.  *Id.* at ¶ 324.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

457.  O'Reilly's assistant told Ms. Pearson at that time that O'Reilly would speak to Ms. Pearson after a few minutes, when O'Reilly had concluded another meeting.  *Id.* at ¶ 325.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

458.  O'Reilly never showed up to her office.  *Id.* at ¶ 326.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

459.  Ms. Pearson then scheduled another meeting for the next day with O'Reilly's assistant.  *Id.* at ¶ 327.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

460.  When Ms. Pearson showed up for that meeting, O'Reilly again did not show up.  *Id.* at ¶ 328.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

461.  O'Reilly subsequently, on March 31, 2016, e-mailed Ms. Pearson to inform her

that she would need another six weeks to reach any conclusions regarding the appeal. *Id.* at ¶ 329.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 136.**

462. That same day, on March 31, 2016, Ms. Pearson e-mailed Logan's President, Clay McDonald. *Id.* at ¶ 330.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

463. In her March 31, 2016 e-mail, Ms. Pearson told McDonald that she had been stalked and harassed, felt that Logan's administration was not taking the circumstances seriously and provided her no protection, and that she continued to be in fear at all times while on Logan's campus, especially as the Male Student now knew that she had made accusations about him. *Id.* at ¶ 331.

**RESPONSE:  See objection to Paragraph 462.**

464. Ms. Pearson specifically informed McDonald that she felt as though O'Reilly, who had requested six additional weeks to review Ms. Pearson's review and avoided meeting with her on two separate occasions, was not taking the matter seriously. *Id.* at ¶ 332.

**RESPONSE:  See objection to Paragraph 462.**

465. Ms. Pearson, knowing she could not rely on O'Reilly, then requested that McDonald take the time to speak with her so that she could tell him how she believed his staff had mishandled her claim. *Id.* at ¶ 333.

**RESPONSE:  See objection to Paragraph 462.**

466. Ms. Pearson also mentioned in her March 31, 2016 e-mail that, in response to her making complaints about the Male Student, she now felt that Logan's administration was attempting to force her to leave the school. *Id.* at ¶ 334.

**RESPONSE:  See objection to Paragraph 462.**

467.  Three days later, on April 3, 2016, McDonald finally responded to Ms. Pearson. *Id.* at ¶ 335.

**RESPONSE:  See objection to Paragraph 462.**

468. McDonald, similar to the troubling tact taken by Bradshaw regarding Ms. Pearson's wanting to avoid working with Sawalich, informed Ms. Pearson that, despite her complaining specifically about O'Reilly's behavior, he saw O'Reilly asthe "final point of appeal in any appeal process such as [Ms. Pearson's] and [he] [had] absolute confidence in her ability to deal fairly and with compassion in even the most complex of cases." *Id.* at ¶ 336.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

469. McDonald concluded his e-mail by asking Ms. Pearson to "[p]lease continue to work with [O'Reilly] as well as Dr. Shelly Sawalich, our [Logan's] Dean of Student Affairs." *Id.* at ¶ 337.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

470. Ms. Pearson responded the same day that, to the contrary, O'Reilly and Sawalich were major parts her problems. *Id.* at ¶ 338.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

471. McDonald completely ignored that e-mail, refusing to engage in any additional correspondence with Ms. Pearson. *Id.* at ¶ 339.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

472. The next day, on April 4, 2016, Ms. Pearson went to O'Reilly's office to retrieve the documents Ms. Pearson had left with O'Reilly. *Id.* at ¶ 340.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

473. O'Reilly gave them back, but only before taking out a stack of papers from the pile.

**RESPONSE: Objection. This alleged fact is not supported any citation.**

474. Ms. Pearson told O'Reilly that she no longer cared to hear Logan's final

decision–in Ms. Pearson's view, the decision as to any further action on Ms. Pearson's case already had been made by Logan's blatant inaction, culminating in O'Reilly's decision to stay the investigation of the matter for an additional six weeks. *Id.* at ¶ 341.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

475. O'Reilly then stated – despite having just suggested staying the investigation for an additional six weeks – that she would have her decision on Ms. Pearson's appeal ready by that evening. *Id.* at ¶ 342.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 137-138.**

476. That evening, O'Reilly, at approximately 10:30p.m., sent Ms. Pearson a letter via e-mail, stating that she had conducted a "thorough review of the professional committee actions," and found that "the process outlined in the [Catalog] was followed and all evidence provided was reviewed." *Id.* at ¶ 343.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 137-138.**

477. Accordingly, O'Reilly concluded, no reason existed to overturn the University Honor Council's disposition, and Ms. Pearson's appeal was therefore denied. *Id.* at ¶ 344.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No. 137-138.**

478. Following O'Reilly's letter, the next day, April 5, 2016, Ms. Pearson visited Bradshaw a final time, told him that she did not appreciate at all how the situation was handled, and asked for names of the University Honor Council members. *Id.* at ¶ 345.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

479.  Unbelievably, Bradshaw explained that he did not know who sat on the Council; this was despite previously telling Ms. Pearson that he would talk to the Council directly and asserted that the Council members all were "trustworthy." *Id.* at ¶ 346-47.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

480. During Shelley Sawalich's time as Title IX coordinator, she investigated three Title IX complaints, of which two were found to be in violations of Title IX; Plaintiff Pearson's, the other Title IX complaint, was found not to be in violation. Ex. V., Sawalich Dep. 17:16-24.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

**Subject to this objection, admitted.**

481. Logan is required to report Title IX violations within Clery. Ex. V., Sawalich Dep. 20:2-4.

**RESPONSE: Objection. This alleged fact is a legal conclusion.  The cited evidence relates to Sawalich's understanding of Title IX.**

482. Despite Logan having the duty to do so, as described in paragraph 480 and 481 herein, there is only one Title IX violation Logan reported in 2014, 2015, and 2016, that of "stalking." Ex. V., Sawalich Dep. 21:3-23:13.  Ex. DDD.

**RESPONSE: Objection This alleged fact contains impermissible legal argument and mischaracterizes the Sawalich's deposition testimony.**

483. Every person at Logan University, except the Student Care Manager, is considered a "responsible person" with a duty to report a claim.  Ex. V., Sawalich Dep. 24:4-19.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .").**

**Subject to this objection, admitted.**

484. Shelley Sawalich "needed clarity" on what Plaintiff Pearson reported and she

"certainly" could not move forward with the investigation without it. Ex. V., Sawalich Dep. 39:7-17.

**RESPONSE: Denied that the cited evidence supports the alleged fact.**

485. Title IX does not require a party to write their own statement. Ex. V., Sawalich Dep. 44:8-9, 44:14.

**RESPONSE: Objection. This alleged fact is a legal conclusion. The cited evidence relates to Sawalich's understanding of Title IX.**

486. Logan provided a SaVE Act quiz for sexual misconduct training, of which there is "no consequence" if a student chooses not to take, or fails, the quiz, despite a university having to provide sexual misconduct training as a "requirement under Title IX" and Logan providing the SaVE Act quiz as "fulfill[ing] that requirement." Ex. V., Sawalich Dep. 56:20-59:24, 61:7, 61:15-16.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . .*").**

**Subject to this objection, admitted.**

487. The Report of Investigation lists "facts in the case" (Ex. EEE), of which

Shelley Sawalich states the following:

a.      The facts were what "people can agree on." Ex. V., Sawalich Dep. 96:6-8. Ex. EEE.

b.      The facts are all "categorizations [...] [the] bucket of things that people agreed on within the context of the investigation." Ex. V., Sawalich Dep. 96:11-13. Ex. EEE.

c.      The facts were "the pieces that people could agree on that weren't contested." Ex. V., Sawalich Dep. 96:17-18. Ex. EEE.

d.      The facts were "a truth held by all of the individuals." Ex. V., Sawalich Dep. 97:12-13. Ex. EEE.

e.      Included in the facts were that "[Plaintiff Pearson] never told him to generally leave her alone or that he was harassing her." Ex. V., Sawalich Dep. 98: 10-19. Ex. EEE.

**RESPONSE: Admitted the quotations are from Sawalich's deposition. However, the alleged facts only contain part of the deposition answers provided by Sawalich and are taken out of context.**

488. The Report of Investigation does not include Shelley Sawalich's handwritten notes (Ex. V., Sawalich Dep. 78:18-23), of which the following relating to the Report of Investigation's "facts in the case" is noted:

a.      The "facts in the case" include that "[Plaintiff Pearson] never told [Male Student] to generally leave her alone or that he was harassing her." Ex. EEE. Shelley Sawalich's notes confirm that "[Plaintiff Pearson] probably him no / blew him off [...] 12-18 times maybe," yet this was not included in the "facts of the case." Ex. FFF. LOGAN - 000408.

b.      The Report of Investigation includes that "Fourteen people, aside from Morgan and Kevin were interviewed [...] 12 of the people said that they witnesses [...] nothing out of the ordinary." Ex. EEE.

c.      The Report of Investigation includes, "Most people interviewed did not witness enough to substantiate claims of stalking or harassment." Ex. EEE.

d.      The "facts in the case" does not include that Plaintiff Pearson is "afraid of retaliation," despite Plaintiff Pearson stating the same in her initial complaint. Ex. EEE. Ex. FFF. LOGAN - 000369.

e.      Plaintiff Pearson's testimony is not considered a fact to be listed in the "facts in the case."  Ex. V., Sawalich Dep. 103:13-15.

f.      In a witness interview with Theresa Zemcuznikov, Shelley Sawalich's notes state that Zemcuznikov stated: "I'd never go anywhere alone with him," that Male Student stated to Zemcuznikov, "Come on over here for a ride and I'll relieve your stress," that Plaintiff Pearson was "like a deer in the headlights," that Male Student asks Zemcuznikov "to snuggle," that Male Student is "pushy," and that Zemcuznikov "advised [Plaintiff Pearson] to stay clear of him." LOGAN - 000380-1. Ex. FFF; these details were not included in the "facts in the case."

g.      Sawalich's notes state that Zemcuznikov corroborated that "[Male Student] is staring at [Plaintiff Pearson] in the library." Ex. FFF. LOGAN - 000386. The "facts in the case" do not state this.

**RESPONSE:  This alleged fact contains impermissible legal argument. Subject to this objection, admitted the quotations are from Sawalich's deposition and notes. However,**

the alleged facts only contain part of the deposition answers and notes provided by Sawalich and are taken out of context.

489. In summary, a "fact in the case" would have to be one that is agreed upon by everyone, including both Plaintiff Pearson and Male Student. Ex. V., Sawalich Dep. 106:6-11, 102:5-6.

**RESPONSE:  This alleged fact contains impermissible legal argument. Subject to this objection, admitted the quotation is from Sawalich's deposition. However, the alleged fact only contains part of the deposition answer provided by Sawalich and is taken out of context.  Sawalich was describing what facts were uncontested and why she included that information in her report.**

*Additional Facts Relating to Plaintiff Kirkpatrick*

490. At all relevant times, I was and am 5 foot 3 inches tall and of slight build; I was under 21 at all times that I interacted with the Male Student. Ex. P, Affidavit of Kirsten E. Kirkpatrick,, at ¶ 25.

**RESPONSE: Objection. The alleged fact is not outcome determinative and, thus, is immaterial to the Court's consideration of the Logan's Motion for Summary Judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017(8th Cir. 1997) ("A careful review of the record…reveals that to the extent that the parties disagree on factual matters, none of the disputes is outcome determinative once put in legal context."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that *there is no genuine dispute as to any material fact. . . ."*).**

**Logan further objections that this alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

491.  The Male Student, at all relevant times, was at least 31 years old, 6 foot 1 inch tall and weighed at least 220 pounds; he was well-muscled and of imposing stature; I was frightened by his size and believe he easily could have hurt me and/or forced me to engage in illicit behavior if I ever were alone with him without protection. *Id.* at ¶ 26.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

492.  On the first day of her Chemistry 1 class, Ms. Kirkpatrick was approached by the Male Student.  *Id.* at ¶ 27.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

493.  Upon entering the classroom, the Male Student almost immediately approached Ms. Kirkpatrick as she was still putting her belongings down. *Id.* at ¶ 28.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

494.  Telling Ms. Kirkpatrick that he was getting numbers from "all" of the other students in the class in order to form a "study group," the Male Student hurriedly asked Ms. Kirkpatrick for her name and phone number. *Id.* at ¶ 29.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

495. Ms. Kirkpatrick, generally taken off guard, complied, giving the Male Student her name and number. *Id.* at ¶ 30.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

496. However, after the Male Student received her name and number, rather than attempt to collect the information of other students that had just entered the class, he simply sat down, waiting for class to begin. *Id.* at ¶ 31.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

497. Ms. Kirkpatrick found this generally unnerving and, as class proceeded and ended, noted that the Male Student did not seem to have collected the name and number of any other student in the class. *Id.* at ¶ 32.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

498. Following class, Ms. Kirkpatrick mentioned the incident to several of her female classmates, several of whom expressed that the Male Student was overtly and sexually aggressive and known for making unwanted advances towards females, and only

females. *Id.* at ¶ 33.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

499. The upcoming Friday, the Male Student texted Ms. Kirkpatrick, asking her if she wanted to come to the library to "study with him" the following Saturday. *Id.* at ¶ 34.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

500. Ms. Kirkpatrick found this odd in light of the fact that she and the Male Student had really only had one class together in which very little substantive material was even covered. *Id.* at ¶ 35.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

501. Ms. Kirkpatrick told the Male Student she was not interested in studying with him, had a boyfriend, and ignored the remainder of his texts, some of which continued to be sexually-charged and disturbing. *Id.* at ¶ 36.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

502. Ms. Kirkpatrick, after speaking with her fellow classmates, and observing that the Male Student only approach women and did not approach men asking for their telephone

numbers, became increasingly frightened that she would be harassed further.  *Id.* at ¶ 37.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact is based on inadmissible hearsay.**

503. On February 4, 2016, Ms. Kirkpatrick met with Sawalich regarding Ms. Pearson's situation.  *Id.* at ¶ 38.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

504. Ms. Kirkpatrick immediately noticed that Sawalich did not appear to be taking the matter very seriously. *Id.* at ¶ 39.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

505. Sawalich told Ms. Kirkpatrick prior to the interview that her statement would be disclosed to the Male Student, which chilled Ms. Kirkpatrick from the outset, as she also feared the Male Student and his potential retaliation if she testified against him. *Id.* at ¶ 40.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

506. Nonetheless, Ms. Kirkpatrick recounted all of the above-delineated behavior, noted that it made her extremely uncomfortable, and stated that she also would feel extremely uncomfortable if alone in the Male Student's presence due to his behavior. *Id.* at ¶ 41.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. See Logan's Statement of Uncontroverted Material Facts No.73-75.**

507. Ms. Kirkpatrick specifically approached Sawalich in the hope that Logan's administration would handle the situation in a manner that would ensure she was not made more vulnerable to harassment. *Id.* at ¶ 42.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

508. Instead, Sawalich did not tape record the interview, only wrote down what Ms. Kirkpatrick said in a selective fashion, and generally appeared uninterested and as though she were not taking Ms. Kirkpatrick's complaints seriously. *Id.* at ¶ 43.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

509. Ms. Kirkpatrick noticed a pattern whereby Sawalich would write down and/or ask Ms. Kirkpatrick to repeat or embellish any facts that could be construed against Ms. Pearson while, on the other hand, not writing down those facts Ms. Kirkpatrick relayed that supported Ms. Pearson's story. *Id.* at ¶ 44.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

510. After reviewing Sawalich's account of her testimony after the fact, Ms. Kirkpatrick noticed numerous inaccuracies. *Id.* at ¶ 45.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

511. Most blatantly false was Sawalich's writing down that Ms. Kirkpatrick testified that "[Ms. Kirkpatrick] [has] never seen them [Ms. Pearson and the Male Student] in the same room." *Id.* at ¶ 46.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

512. Ms. Kirkpatrick never would have made that statement – as Ms. Kirkpatrick, Ms. Pearson, and the Male Student all had been in the same, eight-week-long "Chemistry 2" class together. *Id.* at ¶ 47.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

513. Ms. Kirkpatrick also reported to Sawalich that she knew of numerous other female students who had received unwanted text messages from the Male Student and had been made to feel uncomfortable by the Male Student's actions. *Id.* at ¶ 48.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

514. None of these details – crucial to Ms. Pearson's investigation and actionable Title IX complaints in and of themselves, ever made it into Sawalich's official report of Ms. Kirkpatrick's interview. *Id.* at ¶ 49.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

515. Instead, Sawalich indicated to Ms. Kirkpatrick that nothing further would be done unless Ms. Kirkpatrick wanted to openly confront her accuser by making a charge of sexual harassment, as Sawalich led her to believe the same would be necessary were she to

make any "official" report of harassment. *Id.* at ¶ 50.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

516. Dejected, and feeling incredibly vulnerable to further harassment in light of Logan's failure to do anything to deal with the situation, Ms. Kirkpatrick decided to withdraw from Logan, lest she be subject to harassment and potentially worse action by the Male Student or some other male student that Logan allowed to harass its female students with impunity. *Id.* at ¶ 51.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

517. Largely because she realized, after that meeting, that she could not expect protection from such behavior at Logan, Ms. Kirkpatrick withdrew from Logan after her first semester. *Id.* at ¶ 52.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

518. Logan's failure to protect Ms. Kirkpatrick from the Male Student by completely ignoring her complaints, and by failing to maintain a safe campus environment damaged her in multiple ways. *Id.* at ¶ 53.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

519. Logan's failure to protect Ms. Kirkpatrick from the Male Student by completely ignoring her complaints, and by failing to maintain a safe campus environment damaged me in multiple ways. *Id.* at ¶ 54.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

520. Because Logan failed to protect Ms. Kirkpatrick, she was forced to withdraw completely from Logan, and forced to completely abandon her hopes for become a chiropractor. *Id.* at ¶ 55.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

521. After being sexually harassed, stalked and sexually assaulted, Ms. Kirkpatrick no longer had any desire to remain on campus; in fact, she was afraid to. *Id.* at ¶ 56.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact**

contracts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.

522. Ms. Kirkpatrick's experience with Logan's administration made it abundantly clear that she would not be protected as a student, and that she was not safe on campus. Ms. Kirkpatrick left, in large part, for her own safety. *Id.* at ¶ 57.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

523. Ms. Kirkpatrick never would have left Logan nor abandoned the chiropractic profession in general if not for these events. *Id.* at ¶ 58.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

524. As a result of being forced to withdraw from Logan, Ms. Kirkpatrick lost out on her dream of becoming a chiropractor, a dream that she had since she was a little child. *Id.* at ¶ 59.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

525. Ms. Kirkpatrick was a "straight A" student and already had made some initial plans to start a chiropractic practice in St. Louis Missouri. *Id.* at ¶ 60.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

526. According to Logan's own online information, which, in part, persuaded Ms. Kirkpatrick to attend Logan and become a chiropractor in the first place, Ms. Kirkpatrick could have made $147,000 per year. *Id.* at ¶ 61.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

527. As a result of what happened at Logan, what Ms. Kirkpatrick was exposed to, and what Ms. Kirkpatrick suffered through, Ms. Kirkpatrick no longer could bear to be associated with the chiropractic profession and instead enrolled at a local university to earn her bachelor's degree. *Id.* at ¶ 62.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

528. Consequently, instead of graduating from Logan with a chiropractic doctorship degree, Ms. Kirkpatrick will have to attend school for much longer, if I she is able, to become a doctor and to earn the same amount I would have been able to earn with a chiropractic doctorship. *Id.* at ¶ 63.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

529. Determining the amount of probable lost income over the course of my life is a matter of simple math; whereas Ms. Kirkpatrick was essentially guaranteed by Logan a potential salary of $147,000 per year for the rest of her earning life, Ms. Kirkpatrick now can expect $35,000 (average for biochemistry degree). *Id.* at ¶ 64. Ex. QQQ.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

530. While at first Ms. Kirkpatrick believed that the experience at Logan did not affect her decision to withdraw, in retrospect, and especially in Ms. Kirkpatrick talking to family and friends about the experience she went through, Ms. Kirkpatrick realizes that learning she would not be protected on campus, and learning that Logan would not take any plea for protection seriously, had a drastic negative effect on her desire to become a chiropractor and to stay at Logan. *Id.* at ¶ 65.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

531. In addition to the loss of earning capacity Ms. Kirkpatrick could have expected

as a chiropractor, by being forced to withdraw from Logan, Ms. Kirkpatrick lost tens of thousands of dollars in tuition, as she paid approximately $30,000 to attend her first year of classes at Logan. *Id.* at ¶ 66.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

532. All of the money and time spent at Logan for Ms. Kirkpatrick's first year was completely negated and wasted as a consequence of the circumstances underlying this lawsuit. *Id.* at ¶ 67.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

533. In addition to all of the above, the circumstances Ms. Kirkpatrick suffered as a result of Logan's negligence and failure to protect her Title 9 rights was an affront to her dignity and caused emotional harm. *Id.* at ¶ 68.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

534. Although Ms. Kirkpatrick was not diagnosed by any medical doctor with having a psychological disorder due to the circumstances, during the circumstances, and for a

long time thereafter, she suffered anxiety, depression, and had trouble sleeping and eating all as a result of these circumstances. *Id.* at ¶ 69.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

535. Not only did Ms. Kirkpatrick personally notice that she suffered all of these mental consequences, but her friends and family also noticed the same. *Id.* at ¶ 70.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

536. Notably, when Ms. Kirkpatrick previously was deposed in this matter by an attorney for Logan university, she was unsure how to answer questions that were confusing to her, and questions through which she felt like words were "being put into [her] mouth." *Id.* at ¶ 71.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

537. To the extent Ms. make it clear through that confined testimony that she was damaged in all of the ways set forth in this affidavit, it was the result of feeling that her testimony was forced, and not understanding fully certain legal terms that seemed to have

specific meanings of which she was largely unaware. *Id.* at ¶ 72.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

538. Adding to all of the above, Ms. Kirkpatrick's reputation has been damaged immensely by Logan's actions through all of this -- Logan has publicly issued statements to the news media attempting to discredit me and my co-Plaintiff. *Id.* at ¶ 73.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

539. Ms. Kirkpatrick believes that Logan's failure to protect her from the Male Student absolutely was intentional, although she was being interviewed in respect to her co-Plaintiff's interaction with the Male Student, Ms. Kirkpatrick also was afraid of him, and Ms. Kirkpatrick also suffered sexual harassment by the Male Student; Dean Sawalich purposefully refused to treat her concerns as a Title 9 complaint, and purposely failed to initiate *any* investigation into the Male Student's actions. *Id.* at ¶ 74.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

540. Having no other choice, Ms. Pearson withdrew from Logan and transferred to another school. Ex. O, Affidavit of Morgan A. Katelin Pearson,, at ¶ 348.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

541. Logan's failure to protect Ms. Pearson from the Male Student by completely ignoring her complaints, and by failing to maintain a safe campus environment damaged Ms. Pearson in multiple ways. *Id.* at ¶ 349.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

542. Because Logan failed to protect Ms. Pearson, she was forced to withdraw completely from Logan, and forced to completely abandon her hopes for become a chiropractor. *Id.* at ¶ 350.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

543. After being sexually harassed, stalked and sexually assaulted, Ms. Pearson no longer had any desire to remain on campus; in fact, she was afraid to. *Id.* at ¶ 351.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

544. Ms. Pearson's experience with Logan's administration made it abundantly clear that she would not be protected as a student, and that she was not safe on campus. She left, in large part, for her own safety. *Id.* at ¶ 352.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

545. Ms. Pearson never would have left Logan nor abandoned the chiropractic profession in general if not for these events. *Id.* at ¶ 353.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

546. As a result of being forced to withdraw from Logan, Ms. Pearson lost out on her dream of becoming a chiropractor, a dream that she had since she was a little child. *Id.* at ¶ 354.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

547. Ms. Pearson was a "straight A" student and already had made some initial plans to start a chiropractic practice in St. Louis Missouri. *Id.* at ¶ 355.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits.**

548. According to Logan's own online information, which, in part, persuaded Ms. Pearson to attend Logan and become a chiropractor in the first place, Ms. Pearson could have made $147,000 per year. *Id.* at ¶ 356.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

549.  As a result of what happened at Logan, what Ms. Pearson was exposed to, and what Ms. Pearson suffered through, Ms. Pearson no longer could bear to be associated with the chiropractic profession and instead enrolled at a local university to earn a bachelor's degree. *Id.* at ¶ 357.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

550.  Consequently, instead of graduating from Logan with a chiropractic doctorship degree, Ms. Pearson will have to attend school for much longer, if she is able, to become a doctor and to earn the same amount Ms. Pearson would have been able to earn with a chiropractic doctorship. *Id.* at ¶ 358.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

551.  Determining the amount of probable lost income over the course of Ms. Pearson's life is a matter of simple math; whereas Ms. Pearson was essentially guaranteed by Logan a potential salary of $147,000 per year for the rest of her earning life, Ms. Pearson now can

expect $35,000 (average for biochemistry degree). *Id.* at ¶ 359. EX. QQQ.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

552. The situation described in Ms. Pearson's complaint is the sole reason for her withdrawal from Logan University and for her decision to not continue to become a chiropractor. *Id.* at ¶ 360.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

553. In addition to the loss of earning capacity Ms. Pearson could have expected as a chiropractor, by being forced to withdraw from Logan, Ms. Pearson lost tens of thousands of dollars in tuition, as she paid approximately $30,000 to attend her first year of classes at Logan. *Id.* at ¶ 361.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

554. While Ms. Pearson even considered other chiropractic schools to transfer to, due to the fact Logan completely mishandled her complaints about the Male Student, and failed to protect her from him, he seemed emboldened to the point that he was even attempting to follow me to other chiropractic schools; in light of Logan's failure to protect Ms. Pearson

at all, Ms. Pearson felt she had no choice but to leave the profession entirely. *Id.* at ¶ 362.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

555. All of the money and time spent at Logan for Ms. Pearson's first year was completely negated and wasted as a consequence of the circumstances underlying this lawsuit. *Id.* at ¶ 363.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

556. In addition to all of the above, the circumstances Ms. Pearson suffered as a result of Logan's negligence and failure to protect her Title 9 rights was an affront to her dignity and caused emotional harm. *Id.* at ¶ 364.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

557. Although Ms. Pearson was not diagnosed by any medical doctor with having a psychological disorder due to the circumstances, during the circumstances, and for a long time thereafter, Ms. Pearson suffered anxiety, depression, and had trouble sleeping and eating all as a result of these circumstances. *Id.* at ¶ 365.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact**

contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.

558. Not only did Ms. Pearson personally notice that she suffered all of these mental consequences, but her friends and family also noticed the same. *Id.* at ¶ 366.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

559. Notably, when Ms. Pearson previously was deposed in this matter by an attorney for Logan university, she was unsure how to answer questions that were confusing to her, and questions through which she felt like words were "being put into [her] mouth." *Id.* at ¶ 367.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

560. To the extent Ms. Pearson did not make it clear through that confined testimony that she was damaged in all of the ways set forth in this affidavit, it was the result of feeling that her testimony was forced, and not understanding fully certain legal terms that seemed to have specific meanings of which she was largely unaware. *Id.* at ¶ 368.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

561.  Adding to all of the above, Ms. Pearson's reputation has been damaged immensely by Logan's actions through all of this -- in addition to allowing the Male Student to retaliate against her by spreading false rumors about her throughout the Logan student body, Logan also has publicly issued statements to the news media attempting to discredit Ms. Pearson. *Id.* at ¶ 369.

**RESPONSE: Objection. This alleged fact is not supported by competent evidence and Logan hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact contradicts Plaintiff Pearson's own prior sworn testimony and should be disregarded by the Court.**

562. Ms. Pearson believes that Logan's failure to protect her from the Male Student absolutely was intentional, Ms. Pearson made a complaint yet Logan did almost everything in its power to minimize and trivialize the situation, blame her, and ultimately purposely refused to protect her. *Id.* at ¶ 370.

**RESPONSE: Objection This alleged fact is not supported by competent evidence and hereby incorporates its Motion to Strike Plaintiffs' Affidavits. This alleged fact lacks foundation, is not based on personal knowledge, and/or is impermissible legal argument.**

Respectfully submitted,

**Capes, Sokol, Goodman & Sarachan, P.C.**

_/s/ Mark E. Goodman_

MARK E. GOODMAN, #22707MO
SHEILA GREENBAUM, #25422MO
ANDREW W. BLACKWELL, #64734MO
7701 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: 314.721.7701
Facsimile: 314.721.0554
goodman@capessokol.com
greenbaum@capessokol.com
blackwell@capessokol.com

Margulis Gelfand, LLC
JUSTIN K. GELFAND, #62265MO
8000 Maryland Avenue, Suite 420
St. Louis, Missouri 63105
Telephone: 314.390.0234
justin@margulisgelfand.com

**ATTORNEYS FOR LOGAN UNIVERSITY**

**Certificate of Service**

I hereby certify that on July 20, 2018, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Daniel F. Harvath, Attorney for Plaintiffs.

_/s/      Mark E. Goodman_